**Laura SLIGHT, a minor By and Through her parents, next friends and natural guardians, Peter A. SLIGHT and Sheila Slight, Peter A. Slight and Sheila Slight**

v.

**E.I. DU PONT DE NEMOURS & CO., a foreign corporation, dba DuPont; Fred Winterkamp, Norm Merkosky, Total Distribution, Inc., a foreign corporation, and Max Blair, jointly and severally.**

**Natasha Victoria HEARN, a minor By and Through her parents, next friends and natural guardians, Kim Rodney HEARN and Susan Elizabeth Rose Hearn, and Kim Rodney Hearn and Susan Elizabeth Rose Hearn**

v.

**E.I. DU PONT DE NEMOURS & CO., a foreign corporation, dba DuPont; Fred Winterkamp, Norm Merkosky, Total Distribution, Inc., a foreign corporation, and Max Blair, jointly and severally.**

**Andrew BOURNE, a minor By and Through his parents, next friends and natural guardians, Chris BOURNE and Maggie Bourne; and Chris Bourne and Maggie Bourne, Individually**

v.

**E.I. DU PONT DE NEMOURS & CO., a foreign corporation, dba DuPont; Fred Winterkamp, Norm Merkosky, Total Distribution, Inc., a foreign corporation and Max Blair, jointly and severally.**

**Christopher HENKE, a minor By and Through his parents, next friends and natural Guardians, Phillip HENKE and Lynda Henke, and Phillip Henke and Lynda Henke, Individually**

v.

**E.I. DU PONT DE NEMOURS & CO., a foreign corporation dba DuPont; Fred Winterkamp, Norm Merkosky, Total Distribution, Inc., a foreign corporation, and Max Blair, jointly and severally.**

Civil Action Nos. 2:97–0088, 2:97–0089, 2:97–0090, 2:97–0091.

United States District Court, S.D. West Virginia, Charleston Division.

Sept. 23, 1997.

---

James A. McKowen, Marion E. Ray, Law Offices of James F. Humphreys, Charleston, WV, James L. Ferraro, Ferraro & Associates, Miami, FL, for Andrew Bourne, Laura Slight.

James L. Ferraro, Anna Rivero, Ferraro & Associates, P.A., Miami, FL, Marion E. Ray, Law Offices of James F. Humphreys, Charleston, WV, for Natasha Victoria Hearn, Christopher Henke.

David B. Thomas, Paula Durst Gillis, Spilman, Thomas & Battle, Charleston, WV, for E.I. DuPont De Nemours and Co., Fred Winterkamp, Norm Merkosky, Total Distribution, Inc.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Plaintiffs' motions to remand; (2) Defendants Fred Winterkamp, Norman Merkosky, Total Distribution, Inc., and Max Blair's motions to dismiss them as parties to the action; (3) Defendant DuPont's motions to dismiss based on *forum non conveniens*; (4) Plaintiffs' motions to rule on the motions to remand before ruling on DuPont's motions to dismiss based on *forum non conveniens*; (5) Plaintiffs' motions for leave to file late response to Defendants, *forum non conveniens* motions to dismiss; (6) Defendants' motions to strike Plaintiffs' Memoranda in Response to Defendants' *forum non conveniens* motions to dismiss, or in the alternative, for leave to file surreply in opposition to Plaintiffs' motions to remand; and (7) Plaintiffs' motions for hearing on the *forum non conveniens* dismissal motion.

The Court (1) **DENIES** Plaintiffs' motions to remand; (2) **GRANTS** Defendants Winterkamp, Merkosky, Total, and Blair's motions to dismiss them as parties to the action; (3) **DENIES** Defendant DuPont's motions to dismiss based on *forum non conveniens*; (4) **DENIES** Plaintiffs' motions to rule on the motions to remand before ruling on DuPont's motions to dismiss based on *forum non conveniens*; (5) **GRANTS** Plaintiffs' motions for leave to file late response to Defendants' *forum non conveniens* motions to dismiss; (6) **DENIES** Defendants' motions to strike Plaintiffs' Memoranda in Response to Defendants' *forum non conveniens* motions to dismiss, but **GRANTS** Defendants leave to file surreply in opposition to Plaintiffs' motions

to remand; and (7) **DENIES** Plaintiffs' motions for hearing on the *forum non conveniens* dismissal motion.[1]

Below the Court below discusses the reasons for its rulings on motions (1), (2), and (3).

## I. FACTUAL BACKGROUND

Plaintiffs are British subjects residing in England. They allege serious birth defects caused by the inhalation, ingestion or dermal absorption of Benlate, a fungicide they used in their home gardens. Benlate, which is the DuPont trademark for the product, contains inert ingredients and the active ingredient benomyl. Plaintiffs allege the benomyl contained in the Benlate they used in their gardens was formulated by DuPont at its Belle, West Virginia plant.

At this early stage of the litigation it is not known whether the assailed product in fact was Benlate. However, it appears that Benlate available for garden use in England during the relevant time period was packaged, labeled, marketed and sold by an English agrochemical company, Imperial Chemical Industries PLC ("ICI"). Beginning in 1983, ICI had entered an exclusive agreement with DuPont (U.K.) Limited to market and sell Benlate for home garden use. ICI also was responsible for maintaining the necessary registrations and approvals for the product in Great Britain.

Plaintiffs filed this civil action in the Circuit Court of Kanawha County, West Virginia. Named Defendants include DuPont, a Delaware corporation, Fred Winterkamp, Norm Merkosky, Total Distribution, Incorporated, and Max Blair. Save DuPont, all Defendants are West Virginia residents or domiciliaries. Defendants removed pursuant to 28 U.S.C. § 1441(a) on grounds of diversity jurisdiction, 28 U.S.C. § 1332(a). In the No-

---

1. Also pending are Plaintiffs' motions for voluntary dismissal. Because Plaintiffs have represented they wish to withdraw these motions, the Court **DENIES** the motions as moot.

tice of Removal, Defendants asserted Winterkamp, Merkosky, Total and Blair were fraudulently joined by Plaintiffs in an attempt to render the case nonremovable. See 28 U.S.C. 1441(b) (stating an "action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

## II. DISCUSSION

### A. Jurisdiction

Subject matter jurisdiction must be bottomed on a finding that the non-diverse Defendants, Winterkamp, Merkosky, Total and Blair, were fraudulently joined. A party wishing to establish fraudulent joinder must establish either:

> [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor. A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.

*Watson v. Appalachian Power Co.*, 934 F.Supp. 191, 193 (S.D.W.Va.1996) (Haden, C.J.) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232–33 (4th Cir.1993) (citations omitted)). Because Defendants have made no attempt to prove outright fraud in Plaintiffs' pleadings, they must show there is no possibility Plaintiffs could establish a cause of action against them in a West Virginia court.

 Defendants have advanced compelling arguments that Winterkamp, Merkosky, Total and Blair were fraudulently joined. Plaintiffs did not contest these arguments as to the joinder of Merkosky, Total and Blair. Through silent acquiescence, Plaintiffs abandoned any contention that those three Defen-

dants are proper parties. Plaintiffs devoted their entire response brief to the propriety of their joinder of Mr. Winterkamp. Defendants counter that no possibility of liability against Winterkamp exists because (1) the Complaint is based on Plaintiffs' use of Benlate from 1986–87, but that Winterkamp ceased his involvement with the plant that manufactured Benlate in 1980; (2) Plaintiffs' theory of liability is based on design defects in Benlate, while Winterkamp had no involvement in the development, design, or safety testing of the product; (3) Plaintiffs' first theory of Winterkamp's liability—that corporate officers can be liable for the torts of their corporations—fails because (a) Winterkamp was not an officer of DuPont, and (b) as Plaintiffs concede, English law will apply in resolving the case,[2] and Plaintiffs have identified no comparable English law theory of liability against Winterkamp; and (4) Plaintiffs' second theory of liability against Winterkamp—that an employee is not immune from liability for his own tortious acts—must fail because (a) Plaintiffs have not alleged tortious conduct by Winterkamp, and (b) Plaintiffs have identified no English Law theory of liability against Winterkamp.

The Court agrees with Defendants and holds all, except DuPont, were fraudulently joined as Defendants. Accordingly, the Court **GRANTS** Defendants Winterkamp, Merkosky, Total, and Blair's motions to dismiss and **DENIES** Plaintiffs' motions to remand.

### B. Forum non conveniens

#### 1. General principles

Having determined jurisdiction is proper here, one question remains: Should the Court exercise its discretion to dismiss these cases pursuant to the federal common law doctrine of *forum non conveniens?*

 In general terms, the doctrine of *forum non conveniens* allows a district court having jurisdiction and proper venue to dismiss an action in its discretion because the action is more appropriate for resolution in a

---

**2.** The Court does not by this Memorandum Opinion and Order resolve the choice of law issue.

foreign jurisdiction.[3] *American Dredging Co. v. Miller*, 510 U.S. 443, 447–48, 114 S.Ct. 981, 985–86, 127 L.Ed.2d 285 (1994). As the Supreme Court has explained:

> The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947).

■ DuPont bears the burden of persuading the Court that England is the appropriate forum for the adjudication of Plaintiffs' claims. *Nowsco Well Serv. Ltd. v. Home Ins. Co.*, 799 F.Supp. 602, 611 (S.D.W.Va. 1991) (Copenhaver, J.) (citing cases), *aff'd*, 974 F.2d 1331 (4th Cir.1992) (unpublished decision). "Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient," the ordinarily strong presumption in favor of the plaintiff's choice of forum applies with "less than maximum force" and deserves "less deference" when the plaintiff is foreign. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 261, 102 S.Ct. 252, 265–66, 268–69, 70 L.Ed.2d 419 (1981); *Nowsco Well Serv.*, 799 F.Supp. at 611–12. Of course, this not to say that a foreign plaintiff's choice of forum is entitled to no deference. *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir.1996) (stating "some weight must still be given to a foreign plaintiff's choice of forum. Indeed, ... this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum no deference since

dismissal for *forum non conveniens* is the exception rather than the rule.") (citing *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 168 (2nd Cir.1991)).

■ The Court of Appeals accords broad discretion to the district court's decision to grant or deny *forum non conveniens* dismissal. *Kontoulas*, 745 F.2d at 314; *Hodson v. A.H. Robins Co.*, 715 F.2d 142, 144 (4th Cir.1983); *see also Piper Aircraft*, 454 U.S. at 257, 102 S.Ct. at 266 (stating *forum non conveniens* determination "is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.")

## 2. Availability of alternative forum

■ As Judge Copenhaver has explained, a defendant seeking *forum non conveniens* dismissal first must demonstrate that an alternative forum is available to the plaintiff. *Nowsco Well Serv.*, 799 F.Supp. at 612. The alternative forum requirement is "[o]rdinarily ... satisfied when the defendant is 'amenable to process' in the other jurisdiction[,]" except in "rare circumstances" when "the remedy offered by the other forum is clearly unsatisfactory." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22 (stating dismissal is inappropriate where the alternative forum does not recognize the cause of action)(citing *Gilbert*, 330 U.S. at 506–07, 67 S.Ct. at 842).

■ Plaintiffs contend no alternative forum exists because they have named four defendants, Merkosky, Winterkamp, Total Distribution, and Blair, who are not amenable to service of process in England. However, because the Court has concluded *infra* these Defendants were fraudulently joined, and because DuPont has stipulated it will accept service of process from an English court for actions filed by Plaintiffs in England, Defs.' Am.Mem.Supp.Mot. to Dismiss at

---

**3.** Because 28 U.S.C. § 1404(a) provides for transfers to more convenient federal forums, *forum non conveniens* dismissal is appropriate only where the alternative forum is abroad. *Ameri-* *can Dredging*, 510 U.S. at 449 n. 2, 114 S.Ct. at 986 n. 2; *see also Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 315 (4th Cir.1984).

6–7, the Court has little difficulty finding Plaintiffs will have access to English courts against DuPont if this case is dismissed involuntarily.

### 3. Appropriateness of trial in England

Having made this threshold showing, DuPont next must demonstrate, through examination of the two classes of interests—public and private—identified in *Gulf Oil*, 330 U.S. at 507, 67 S.Ct. at 842, that trial of these actions is more appropriate in England. *Nowsco Well Serv.*, 799 F.Supp. at 612; *Hodson v. A.H. Robins Co., Inc.*, 528 F.Supp. 809, 817 (E.D.Va.1981), *aff'd*, 715 F.2d 142 (4th Cir.1983).

The private interest factors identified by the Gulf Oil Court include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. . . .

330 U.S. at 508, 67 S.Ct. at 843; *Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6; *Nowsco Well Serv.*, 799 F.Supp. at 613. The Court also enumerated several public interest concerns bearing on the question:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs

of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843; *Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6; *Nowsco Well Serv.*, 799 F.Supp. at 613.[4]

### a. Private interest factors

#### i. Relative ease of access to sources of proof; witnesses

Plaintiffs contend the relevant documents and witnesses pertaining to their claims are located in or near this district. They characterize this action as essentially a product liability case, and aver the product at issue was tested in Delaware, where DuPont stores millions of documents related to the product's development, testing, formulation, manufacture and processing, James L. Ferraro Decl. ¶¶ 11–13, and manufactured at DuPont's Belle, West Virginia plant. DuPont in turn maintains much of the evidence it will need to defend the cases is located in England, including third-party documents and witnesses related to (1) the marketing, packaging, labeling, approval and sale of the product in England; (2) Plaintiffs' purchase and use of the product; and (3) the extent of Plaintiffs' injuries.[5]

---

**4.** *Compare P.M. Enterprises v. Color Works, Inc.*, 946 F.Supp. 435, 440 (S.D.W.Va.1996) (Haden, C.J.) (listing factors that inform a court's decision whether to transfer a case pursuant to the transfer of venue statute, 28 U.S.C. § 1404(a)).

**5.** Plaintiffs dispute DuPont in fact needs the English evidence it says it needs. In the *Castillo* case, a civil action instituted by Plaintiffs' counsel in Florida alleging similar injuries caused by exposure to Benlate, Plaintiffs aver DuPont did not depose or call at trial any of these types of witnesses. Instead, according to Plaintiffs, DuPont's defense focused on challenging the scientific basis for the *Castillo* plaintiffs' contention that

DuPont's Benlate product can or did cause the developmental malformations suffered by those plaintiffs. DuPont has responded that it intends to pursue a different litigation strategy than the one it employed in the *Castillo* case because those strategies did not succeed. In any event, Plaintiffs argue these fact witnesses are unnecessary because all evidence on the issue of causation will be provided by the Plaintiffs themselves, who will be available for deposition testimony in West Virginia should this Court retain jurisdiction. Because no significant liability witnesses reside in England and because benomyl was formulated in the United States, all of the key witnesses, according to Plaintiffs, reside here.

If the case remains here, DuPont claims it will have difficulty obtaining documents and witnesses located in England. To obtain the evidence it says it will require, DuPont will have to resort to the Hague Convention procedures on the Taking of Evidence Abroad in Civil or Commercial Matters, codified at 28 U.S.C. § 1781, to which the United States and England are signatories. Under the statute, a federal district court may issue a letter of request to a contracting nation to obtain relevant evidence located beyond the reach of the district court and within the jurisdiction of the contracting nation. *See generally Hodson,* 528 F.Supp. at 820–821 (discussing evidentiary procedures under the Hague Convention); *see also Pain v. United Techs. Corp.,* 637 F.2d 775, 788–90 (D.C.Cir. 1980) (same). The foreign court then would execute the request in accordance with "its own law as to the methods and procedures to be followed." Hague Convention art. 9; *see also* Hague Convention art. 10; Ian Charles Dodds–Smith Decl. I ¶ 38 (stating English Courts will carry out a request from a foreign court "only if it is proper, practicable, and to the extent that it is permissible under English law."). Because England's rules are significantly more restrictive of permissible discovery than federal discovery rules,[6] DuPont likely will be denied access to some of the English documents and evidence it claims it will need to defend this action wherever the case is tried.

From the Plaintiffs' perspective, if the case is litigated in England, Plaintiffs will encounter similar difficulties obtaining English documents and witnesses, but likely will have less difficulty gaining access to American documentary evidence and witnesses. A federal statute, 28 U.S.C. § 1782, is designed to assist foreign litigants and tribunals obtain evidence located in this country. Pursuant to that statute, foreign litigants and tribunals may request district courts to issue orders to facilitate discovery in the United States in connection with actions pending abroad. In response to such requests, district courts may order production of the requested documents and deposition testimony in accordance with the Federal Rules of Civil Procedure or, if specified, in accordance with the practice and procedure of the foreign country in which the litigation is pending.[7] DuPont has stipulated that, if these cases are dismissed and litigated in England, it "will not oppose any reasonable application by plaintiffs to take discovery pursuant to 28 U.S.C. § 1782[or] oppose the admissibility at trial of any deposition testimony taken by plaintiffs pursuant to [§ 1782] on the ground that only live testimony of witnesses should be allowed into evidence." Defs.' Reply to Pls.' Supplemental Resp. Mot. Dismiss at 9–10 (emphasis in original).

In sum, both parties will encounter obstacles to English evidence and witnesses

---

Frankly, it is unclear at this juncture which party has the better argument. As the case develops, the answers will become readily apparent.

6. For example, in England, evidence sought solely for pre-trial purposes, i.e., evidence sought in the hopes it may lead to other relevant evidence, is not discoverable. Dodds–Smith Decl. I ¶ 40. Additionally, according to Mr. Dodds–Smith, an English solicitor who has represented DuPont (U.K.) Ltd. in matters relating to Benlate, English courts do not enforce requests for general discovery of documents; each document sought through discovery must be specifically described. *Id.* ¶ 43.

7. Title 28 U.S.C. § 1782 provides in pertinent part:

 (a) The district court of the district in which a *person resides or is found may order him to give* his testimony or statement or to produce a document or other thing for use in a proceeding in a

foreign ... tribunal.... The order may be made pursuant to a letter rogatory issued, or request made, by a foreign ... tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. [ ] The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country ... for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

 (b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign ... tribunal before any person and in any manner acceptable to him.

wherever the case is tried. Resort to the channels of international judicial assistance available through 28 U.S.C. § 1782 and the Hague Convention likely will be costly for both parties and will involve frequest shuttling of documents and attorneys, between England and the United States. DuPont has failed to carry its burden of demonstrating an English forum will provide greater Ease of access to documents and witnesses than will a forum in this district. This factor favors retention of jurisdiction.

### ii. View of the premises

In the *Castillo* case, DuPont requested but did not receive a jury view of the premises at which the plaintiffs were exposed to the product. Instead, the jurors saw videotape and photographs of the site. Notwithstanding DuPont's contentions to the contrary, a jury view is unnecessary and, thus, not a factor in this case.

### iii. Other practical problems

### aa. Financial hardship

■ A court properly may consider a plaintiff's financial hardship as one factor in the *forum non conveniens* inquiry. *Murray*, 81 F.3d at 292–93 (2d Cir.1996); *Reid–Walen v. Hansen*, 933 F.2d 1390, 1398 (8th Cir. 1991); *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1246 (7th Cir.1990), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991); *Macedo v. Boeing Co.*, 693 F.2d 683, 688, 690 (7th Cir.1982).

Plaintiffs contend if the Court dismisses these cases they will be unable to retain counsel to pursue their claims in England. On this point, Plaintiffs have offered affidavits by English solicitor Martyn Day, senior partner with the firm of Leigh, Day & Co. and "the leading solicitor" in the area of toxic torts, Day Decl. ¶ 3, and by Mr. Day's colleague at Leigh Day, Alan Care.

In England, solicitors cannot accept cases on a contingency fee basis. However, according to Mr. Day, the British Parliament in 1995 authorized conditional fee arrangements, which are similar to contingency fee arrangements. Conditional fees allow solicitors to recover up to double their hourly rate for time devoted to the successful litigation of a conditional fee case, or no fee at all if the action is unsuccessful. Mr. Day states Leigh Day, a leading English personal injury firm with expertise in litigating disputes such as this one, would not accept Plaintiffs' case under a conditional fee arrangement in England because of the risks associated with pursuing their claims. In England, the losing party to an action must pay the winner's costs.[8] Litigating this case will likely cost several hundred thousand dollars.

Additionally, Plaintiffs believe they could not secure representation in England through the assistance of Legal Aid, which provides public funding to solicitors to pursue claims on behalf of persons unable to afford litigation costs. According to Mr. Dodds–Smith,

> in general legal aid will only be granted in circumstances where a client of moderate means paying privately would be advised to litigate. The notional private client being advised must be taken to be a person with adequate means to meet the probable costs of the proceedings, but not with overabundant means, so that paying the costs would be possible, although something of a sacrifice.

Dodds–Smith Decl. II ¶ 8.

In 1993, one of the Plaintiffs in this action, Andrew Bourne, retained Leigh Day to litigate his and others' claims in England. Initially, Leigh Day was to be recompensed by Legal Aid to assess the merits of the Bournes' case. According to Leigh Day's Mr. Care, due to the significant restrictions English law places on pretrial discovery, Leigh Day was unable to obtain the information from DuPont and ICI necessary to substantiate the Bournes' claims. As a result, according to Mr. Care, Legal Aid eliminated public funding for the case. DuPont's Mr. Dodds–Smith takes issue with this point, suggesting instead that Leigh Day caused Legal

---

**8.** Litigants in England can purchase legal expenses insurance to protect themselves from this potential liability. It appears the high cost of litigating this case coupled with the novel claims presented would render such insurance either quite expensive or impossible to obtain. *See* Day Decl. ¶ 10; Dodds–Smith Decl. II ¶ 22.

Aid to be discharged because, in light of the substantial verdict in the *Castillo* case, the United States offered a vastly superior forum. Dodds–Smith Decl. II ¶ 17. In any event, DuPont does not contend either that the Plaintiffs will or likely will obtain Legal Aid in England,[9] or that an English solicitor would, despite the high costs of litigating this matter and the risks associated with trying novel legal issues in English courts, accept the case on a conditional fee basis. The Court is concerned that Plaintiffs' ability to bring their claims in England may be foreclosed should it grant the motion to dismiss. This factor, while not dispositive of the motion to dismiss, favors retaining jurisdiction in this Court.

### bb. DuPont's ability to implead a necessary third-party

■ DuPont contends if the case is tried here it will be unable to implead ICI, the company that sold the product purchased by Plaintiffs, and the English authorities who approved the product for sale in the United Kingdom by ICI. The inability to implead third parties directly involved in the controversy is a factor which favors dismissal. *Hodson,* 528 F.Supp. at 822 (citing *Pain,* 637 F.2d at 790; *Fitzgerald v. Texaco Inc.,* 521 F.2d 448, 453 (2d Cir.1975)).

Frankly, as was the case in *Hodson,* the Court has little evidence of third parties possibly involved in this litigation and the extent of their potential liability. Additionally, as Judge Merhige noted in *Hodson, id.,* the Court of Appeals in *Morehead v. Barksdale,* 263 F.2d 117 (4th Cir.1959), affirmed the district court's refusal to dismiss an action against the operator of an automobile which crashed in Germany, despite the fact the vehicle was insured by a German company. Accordingly, the Court accords this factor little weight in its *forum non conveniens* analysis.

### b. Public interest factors

### i. The Court's familiarity with applicable law

■ DuPont argues dismissal is warranted because it contends this Court will be called upon to apply English law to the dispute. While it is true "the public interest factors point toward dismissal where the court would be required to untangle problems in conflict of laws and in law foreign to itself," *Piper Aircraft,* 454 U.S. at 251, 102 S.Ct. at 263, this fact alone is not sufficient to justify dismissal if a weighing of the relevant factors favors retention of jurisdiction, *id.* at 260 n. 29, 102 S.Ct. at 268 n. 29; *Hodson,* 715 F.2d at 144; *Ferruzzi Italia, S.p.A. v. Trade & Transport, Inc.,* 683 F.Supp. 131, 136 (D.Md. 1988); *Hodson,* 528 F.Supp. at 823. Like Judge Merhige in *Hodson* and Judge Motz in *Ferruzzi Italia,* the Court is not especially daunted by the challenges of applying English law.

### ii. Interests of foreign vs. local jurisdiction

Plaintiffs contend they were injured by a DuPont product manufactured in West Virginia by citizens of this state. DuPont responds that England's interest in the controversy is stronger because the government there has approved the product for sale in England. While it is true England has an interest in the safety of the products its citizens consume, it is also true that West Virginia has an interest in the safety of products manufactured here.[10] This local interest favors retention of jurisdiction. *Cf. Hodson,* 528 F.Supp. at 823 (local interests in the safety of a product manufactured locally are more significant than England's interest in the safety of products consumed by its citizens).

### iii. Avoidance of overburdening local dockets and potential jurors

From the Court's clearly superior vantage point, there is no cause for concern that trial of this case in this district would overburden the local docket. Nor does the Court believe a forum here would overburden local citizens called for jury duty.

### 4. Conclusion on the *forum non conveniens* motions

As Judge Merhige concluded was the case in *Hodson,* "trial of these cases will not be

---

**9.** They do, however, observe Plaintiffs would not be barred from reapplying for Legal Aid.

**10.** The Court is aware of DuPont's contention that benomyl is manufactured both at the Belle plant and at locations abroad.

easy or expeditious regardless of where they are heard." 528 F.Supp. at 824. The Court has sifted through the numerous affidavits, examined the parties' well-stated legal arguments, and considered all *Gulf Oil* factors. Taken as a whole, the factors do not point strongly in either direction. Regardless of where the case is tried, the nonprevailing party on the motions to dismiss will suffer restricted access to discovery it claims is necessary. Dismissal by this Court, however, may foreclose any opportunity Plaintiffs have to pursue their claims. The remaining factors favor and disfavor trial in England with no preponderating weight.

In the final analysis, the Court is unable to conclude the weight of the factors tips in favor of dismissal, even in view of the reduced weight accorded these foreign Plaintiffs' choice of forum. Accordingly, the Court **DENIES** the *forum non conveniens* motions to dismiss and concludes trial of these cases is an appropriate discretionary exercise of jurisdiction by this Court.

### III. CONCLUSION

The Court (1) **DENIES** Plaintiffs' motions to remand; (2) **GRANTS** Defendants Winterkamp, Merkosky, Total, and Blair's motions to dismiss them as parties to the action; (3) **DENIES** Defendant DuPont's motions to dismiss based on *forum non conveniens; (4)* **DENIES** Plaintiffs' motions to rule on the motions to remand before ruling on DuPont's motions to dismiss based on *forum non conveniens;* (5) **GRANTS** Plaintiffs' motions for leave to file late response to Defendants' *forum non conveniens* motions to dismiss; (6) **DENIES** Defendants' motions to strike Plaintiffs' Memoranda in Response to Defendants' *forum non conveniens* motions to dismiss, but **GRANTS** Defendants leave to file surreply in opposition to Plaintiffs' motions to remand; and (7) **DENIES** Plaintiffs' motions for hearing on the *forum non conveniens* dismissal motion.