Ethel TAYLOR, Plaintiff
Below, Appellant,

v.

LSI LOGIC CORPORATION, Defendant
Below, Appellee.

No. 58, 1998.

Supreme Court of Delaware.

Submitted: July 21, 1998.
Decided: Aug. 25, 1998.
Rehearing Denied Sept. 15, 1998.

Joseph A. Rosenthal, and Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington (H. Adam Prussin (argued), of Silverman, Harnes, Harnes, Prussin & Keller, New York City; and Berman Devalerio Pease & Tabacco, San Francisco, CA; of counsel), for Plaintiff.

R. Franklin Balotti and Robert J. Stearn, Jr., of Richards, Layton & Finger, Wilmington (Dennis J. Block (argued), Stephen A. Radin, and Jessica Mann, of Weil, Gotshal & Manges, L.L.P., New York City; and E. David D. Tavender, of Milner Fenerty, Calgary, CN; of counsel), for Defendant.

Before WALSH, HARTNETT, and BERGER, JJ.

HARTNETT, Justice.

In this appeal we consider whether the Court of Chancery has subject matter jurisdiction to adjudicate a claim predicated upon Section 241 of the Canada Business Corporations Act ("the Canadian Act"). We hold that the equitable relief sought in the complaint may be granted only in the courts of Canada as those courts are defined in Section 2 of the Canadian Act. We, therefore, affirm the Court of Chancery's dismissal of the suit, albeit on different grounds. We disagree with the Court of Chancery that the doctrine of comity dictates dismissal of this suit and we find that its holding that it had concurrent jurisdiction to hear this suit was incorrect.

**Facts and Procedural History**

The pertinent facts are outlined in detail in this Court's 1997 decision involving this suit.[1] In summary, Ethel Taylor, a citizen of Toronto, Canada, alleges that she formerly owned shares of common stock of LSI Logic of Canada ("LSI Canada"). LSI Canada, a

---

1. *Taylor v. LSI Logic Corp.*, Del.Supr., 689 A.2d 1196 (1997).

Canadian Corporation chartered under the Canada Business Corporations Act, designed computer systems for its Canadian customers. LSI Logic Corporation ("Logic–Delaware"), a Delaware Corporation, designs and manufactures computer systems for corporate customers around the world and was LSI Canada's sole supplier. Logic–Delaware would manufacture and sell computers to LSI Canada's specification that LSI Canada resold to its customers.

In November 1994, Logic–Delaware, which owned 55% of LSI Canada's common stock, announced its intention to take LSI Canada private through an offer to purchase all of LSI Canada's issued and outstanding publicly traded common shares at $3.30 per share.[2] The remaining 45% of LSI Canada's common stock was publicly traded and was widely held by citizens of the United States and Canada.[3] In connection with the offer, LSI Canada's independent directors hired ScotiaMcLeod, an investment banking firm, which estimated the value of LSI Canada's issued and outstanding common shares to be $4.80 to $5.60 per share.[4] Logic–Delaware subsequently withdrew its offer rather than increase its price.

Approximately six months later, Logic–Delaware announced another offer to buy the outstanding common stock of LSI Canada for $4 per share. In its offering circular, Logic–Delaware revealed that it proposed to increase intercompany transfer prices with LSI Canada to reflect Logic–Delaware's high risk, capital intensive operations. Logic–Delaware recognized that these increases would have a materially adverse affect on LSI Canada's profitability, and, therefore, considered it appropriate to make an offer to purchase all the outstanding shares.

At the independent directors' request, ScotiaMcLeod, again, valued LSI Canada's common shares, estimating the value of the shares to be approximately $4.90 to $5.70 per share. The independent directors, nevertheless, recommended to the minority shareholders that they "seriously consider accepting" Logic–Delaware's $4 per share offer. In the independent directors' opinion, LSI Canada would have increasing difficulty in resisting Logic–Delaware's proposed changes to LSI Canada's business that would ultimately " ... materially reduce the profitability of LSI Canada ... ".

The minority shareholders, including Plaintiff Taylor, subsequently tendered approximately 10.1 million shares, leaving fewer than 1.7 million shares not tendered. On September 8, 1995, LSI Canada, at Logic–Delaware's behest, implemented a reverse stock split that cashed out the remaining public shares at the same $4 per share price.[5]

Taylor, despite tendering all her shares in response to Logic–Delaware's tender offer, brought an action in the Delaware Court of Chancery seeking to enjoin Logic–Delaware from acquiring the minority shareholder's interest in LSI Canada and from implementing any changes in Logic–Delaware's transfer pricing policies or otherwise undermining LSI Canada's profitability. Logic–Delaware responded by moving to dismiss Taylor's complaint. The issue of lack of subject matter jurisdiction was not asserted in that motion, however, and the only issue argued was that the suit should be dismissed on the grounds of *forum non conveniens*. That argument was predicated on the allegation that Delaware courts should defer to the Canadian courts because LSI Canada was a Canadian corporation. The Court of Chancery granted the motion and dismissed the

---

**2.** At the time of Logic–Delaware's offer, LSI Canada had evolved into a geographic distribution channel for the products and technologies of Logic–Delaware. LSI Canada's foray into a wafer fabrication facility in Edmonton and its entry into the personal computer business and product development engineering programs had been disappointing and subsequently ceased.

**3.** LSI Canada was a wholly owned subsidiary of Logic–Delaware prior to an initial public offering in 1987.

**4.** All monetary values in this opinion are expressed in Canadian dollars.

**5.** Holders of about 800,000 untendered shares perfected appraisal rights in the courts of Canada. As far as this Court is aware, the appraisal proceeding is still pending.

action.[6] On appeal, this Court reversed, holding that Logic–Delaware had "failed to demonstrate how plaintiff's choice of forum results in an overwhelming hardship to it." [7]

On April 25, 1997, Logic–Delaware renewed its motion to dismiss by asserting that the Court of Chancery did not have subject matter jurisdiction and, alternatively, that the complaint failed to state a claim under Section 241 of the Canada Business Corporations Act.[8] The Court of Chancery found that it had concurrent jurisdiction to adjudicate Taylor's claim under the Canadian Act.[9] Nevertheless, it dismissed the action finding that principles of comity required it "to refrain from resolving public policy issues of first impression touching the internal governance of entities controlled by Canada law." [10]

In this appeal, Taylor contends that the Court of Chancery misapplied the principles of comity and, therefore, improperly dismissed her complaint without finding that the complaint failed to state a cause of action. In addition, she maintains that her complaint states a cause of action.

In response, Logic–Delaware contends that the Delaware Court of Chancery lacks subject matter jurisdiction to hear Taylor's claim that is based solely on the Canadian Act. Alternatively, Logic–Delaware contends that the complaint was properly dismissed under the doctrine of comity or the "internal affairs doctrine," or because the complaint fails to state a cause of action under the Canadian Act.

### Standard and Scope of Review

The dispositive issue presented in this appeal is whether the Court of Chancery has subject matter jurisdiction to adjudicate a cause of action predicated on Section 241 of the Canada Business Corporations Act. This requires us to determine whether the trial court correctly formulated and applied legal precepts in construing the statutory laws of Canada.[11] Accordingly, our review is *de novo*.[12]

### Subject Matter Jurisdiction under Section 241 of the Canadian Act

■ LSI Canada contends that the Delaware Court of Chancery lacks subject matter jurisdiction because Section 2 of the Canada Business Corporations Act requires that suits based on the Canadian Act be brought only in the courts of Canada. In contrast, Taylor contends that Section 2 relates only to procedural venue and is not a jurisdictional provision.

Taylor concedes that the sole basis for her claim is Section 241 of the Canadian Act, commonly referred to as the "oppression remedy." The "oppression remedy" has been described as being the:

> Charter of Rights and Freedoms of corporate law. It is a relatively new creature of statute, so it is little developed. It is broad and flexible, allowing any type of corporate activity to be the subject of judicial scrutiny. The potential protection it offers corporate stakeholders is awesome. Nevertheless, the legislative intent of the oppression remedy is to balance the interests of those claiming rights from the corporation against the ability of management

6. *Taylor v. LSI Logic Corp.*, Del. Ch., C.A. No. 13915, 1996 WL 361505 (June 21, 1996).

7. *Taylor*, 689 A.2d at 1198.

8. Logic–Delaware contends that it did not raise the issue of the trial court's subject matter jurisdiction in its first motion to dismiss because at the time the motion was presented it was without knowledge that Taylor's complaint was based on Section 241 of the Canada Business Corporations Act because the complaint nowhere referred to that Section. The parties both agree that the issue of lack of subject matter jurisdiction was properly before the Court of Chancery. *Taylor*, Del. Ch., C.A. No. 13915 at 8.

9. *Taylor*, Del. Ch., C.A. No. 13915 at 17.

10. *Id.* at 2.

11. *Sanders v. Sanders*, Del.Supr., 570 A.2d 1189, 1190 (1990) (citing *Rohner v. Niemann*, Del. Supr., 380 A.2d 549, 552–53 (1977)); *Snyder v. Andrews*, Del.Supr., 708 A.2d 237, 241 (1998) (citations omitted).

12. *Sanders*, 570 A.2d at 1190–91 (citations omitted); *Snyder*, 708 A.2d at 241 (citations omitted).

to conduct business in an efficient manner.[13]

Section 241 of the Canada Business Corporations Act provides in relevant part:

(1) A complainant may apply to a *court* for an order under this section.

(2) If, upon an application under subsection (1), the *court* is satisfied that in respect of a corporation or any of its affiliates—

(a) any act or omission of the corporation or any of its affiliates effects a result,

(b) the business or affairs of the corporation or any of its affiliates are or have been carried on in a manner, or

(c) the powers of the directors of the corporation or any of its affiliates are or have been exercised in a manner that is oppressive or unduly prejudicial or that unfairly disregards the interest of any security holder, ... the *court* may make an order to rectify the matters complained of.[14] (emphasis added)

Section 2 of the Canadian Act provides:

(1) In this Act, ... *"court"* means:

(a) in the Province of Newfoundland, and Prince Edward Island, the trial division or branch of the Supreme Court of the Province,

(a.1) in the Province of Ontario, the Ontario Court (General Division),

(b) in the Provinces of Nova Scotia and British Columbia, the Supreme Court of the Province,

(c) in the Province of Manitoba, Saskatchewan, Alberta, and New Brunswick, the Court of Queen's Bench for the Province,

(d) in the Province of Quebec, the Superior Court of the Province, and

(e) in the Yukon Territory and the Northwest Territories, the Supreme Court thereof;[15]

■ In construing a statute, this Court must ascertain the Legislative intent.[16] In ascertaining the intent of the Canadian Parliament we look for guidance to the cases in Canada that have construed the Canada Business Corporations Act.

While the cases in Canada interpreting Section 2 of the Canadian Act are limited, they are persuasive. In *Anderson v. Ralston Court, Ltd.*,[17] the plaintiff filed an action in the British Columbia Provincial Court alleging a claim that the court determined to be premised on Section 241. The court found that, because the British Columbia Supreme Court's jurisdiction was limited by Section 2 of the Act, its jurisdiction was also limited.[18] The court then dismissed the action finding that the Supreme Court in the province was the properly designated court in which to bring a corporate claim.[19]

In *Nova Ban–Corp Ltd. v. Tottrup*,[20] the plaintiff brought an action as the creditor of the defendant corporation, seeking a refund for tax payments improperly paid on behalf of its president. The Court of the Queen's

13. *Kelvin Energy Ltd. v. Lee,* Can.Supr., 97 D.L.R. 4th 616, 1992 DLR LEXIS 2302 (1992) (quoting SHAREHOLDER REMEDIES IN CANADA, BUTTERWORTHS, para. 18.1 at p. 18.1 (1989)). Because the oppression remedy in Section 241 is purely a legislatively created statutory remedy, Taylor's reliance on *Tennessee Coal,* for the proposition that a court will not find exclusive jurisdiction in a statute unless the place of bringing the suit is part of the cause of action because the right and remedy are so inseparably intertwined that the right depends upon enforcement in a particular tribunal, is misplaced. *See Tennessee Coal, Iron & R.R. Co. v. George,* 233 U.S. 354, 34 S.Ct. 587, 58 L.Ed. 997 (1914) (holding unconstitutional an Alabama statute restricting a servant suit for enforcement liability for injuries caused by defective machinery to the court of that state).

14. Canada Business Corporations Act § 241 (emphasis added).

15. Canada Business Corporations Act § 2.

16. *Kallop v. McAllister,* Del.Supr., 678 A.2d 526, 530 (1996) (citing *Acierno v. Worthy Bros. Pipeline Corp.,* Del. Supr., 656 A.2d 1085, 1088 (1995) and *Alfieri v. Martelli,* Del.Supr., 647 A.2d 52, 54 (1994)).

17. B.C. Prov., B.C.J. No 2700(QL) (1993).

18. *Id.* at para. 26 (quoting *Nystad v. Harcrest Apartments Ltd,* B.C.Supr., 3 B.C.L.R. (2d) 39 (1986)).

19. *Id.*

20. Can. Fed. Ct., 1 F.C. 288 (T.D.) (1990).

Bench in Alberta granted plaintiff permission to file a derivative action pursuant to Section 232 of the Canada Business Corporations Act.[21] The court then issued an order which permitted the plaintiff to file an action in the Federal Court of Canada "to determine the proper and appropriate tax payable by [the corporation] ... and all related questions touching thereon ... "[22] The Federal Court held that the Court of the Queen's Bench, as the designated court in Section 2 of the Act, had exclusive jurisdiction for the plaintiff's corporate claims finding that:

> [o]n its face subsection 232(1) might suggest that if that "court" once authorized an action whether in that court or some other court, then Parliament must be taken to have so authorized the action. However it is clear from subsections 232(2) and 234(2) that the action or application when brought must also be brought in the "court" as defined; namely, in Alberta, in the Court of the Queen's Bench. In subsection 232(2) it is provided that 'No action may be brought ... under subsection (1) unless the *court* is satisfied that.' This clearly implies that the action is to be brought in the same 'court' as gives leave for the action to be brought. Similarly in subsection 234(2) it is the 'court' which has authority to give the various forms of relief specified there, some of which relief might be involved in the statement of claim in the Federal Court in this action. Thus, the *Canada Business Corporations Act* does not provide a basis for a creditor to commence proceedings in the Federal Court in the name of its debtor in respect of the tax assessment of that debtor.[23]

We, therefore, find that it was the intent of the Parliament that actions brought under Section 241 of the Canada Business Corporations Act be brought only in the courts of Canada identified in Section 2 of the Canadian Act.

We also find that Taylor's contention that Section 2 of the Canadian Act is merely a procedural venue provision to be unsupported by the clear text of the Canadian Act. In addition, the Canadian Act's provisions for an appraisal, Section 190, specifically contains a venue provision.[24] It states: "[a]n application ... shall be made to a court having jurisdiction in the place where the corporation has its registered office or in the province where the dissenting shareholder resides if the corporation carries on business in that province."[25]

We, therefore, hold that Taylor's exclusive equitable remedy under Section 241 of the Canada Business Corporations Act for oppressive corporate acts lies in the courts of Canada as defined in Section 2 of the Canadian Act.[26]

Our holding is further supported by Section 4 of the Canadian Act's enumerated goal of seeking to provide a uniform law for Canadian corporations:

> The purposes of this Act are to revise and reform the law applicable to business corporations incorporated to carry on business throughout Canada, to advance cause of uniformity of business corporation law in Canada and to provide a means of allowing an orderly transference of certain fed-

**21.** In 1989, Section 232(1) provided that:

> Subject to subsection (2), a complainant may apply to a court for leave to bring an action in the name and on behalf of a corporation or any of its subsidiaries, or intervene in an action to which any such body corporate is a party, for the purpose of prosecuting, defending or discontinuing the action on behalf of the body corporate.

**22.** *Tottrup*, 1 F.C. at 291.

**23.** *Id.*, at 293–94 (emphasis in original). *But see Messinger v. United Canso Oil and Gas Ltd.*, D. Conn., 486 F.Supp. 788 (1980) (where a United

States Federal District Court found that Section 232 of the Canadian Act was merely a procedural mechanism because it did not create new liabilities where none existed before.)

**24.** Canada Business Corporations Act § 190(17).

**25.** *Id.*

**26.** *See In re Nuveen Fund Litigation*, N.D.Ill., No. 94–C–360, 1996 U.S. Dist. LEXIS 8077 (June 11, 1996) (where the United States District Court held that a Minnesota statute which provided that "a *court of this state* may ... grant any equitable relief ... " conferred exclusive jurisdiction to the Minnesota courts) (emphasis added).

eral companies incorporated under various Acts of Parliament to this Act.[27]

## Comity

Although not dispositive, in view of our holding that the Court of Chancery does not have subject matter jurisdiction over the suit, we take this opportunity to clarify the doctrine of comity as between the courts of different nations as a basis for the dismissal of a suit. "Comity" is defined as:

"neither a matter of absolute obligation, on one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." [28]

█ Under the doctrine of comity, Delaware courts have dismissed actions when there was a judgment entered in another country that was dispositive of the case by applying the foreign jurisdiction's rules of collateral estoppel,[29] and when there was a prior filed action pending in a court of another state involving the same parties and the same claims.[30] The Delaware courts have, however, correctly refused to apply the principles of comity when there is no prior action pending in another jurisdiction and a party is merely seeking a dismissal based on the doctrine of *forum non conveniens*.[31] The doctrine of comity should not be used to prevent

a Delaware Court from hearing an issue of first impression controlled by foreign law if there is no action pending or decided between the parties.[32] Our observation in this Court's previous decision in this action that a trial court has inherent power to control its own docket was not intended to indicate that a trial court should dismiss a case merely because an issue of foreign law is presented.[33]

## Conclusion

We find that the Court of Chancery lacks subject matter jurisdiction to grant the equitable relief Taylor seeks based on Section 241 of the Canada Business Corporations Act because Section 2 of that Act vests exclusive jurisdiction over that claim in the Canadian courts. We, therefore, **AFFIRM** the Court of Chancery's dismissal of Taylor's complaint although the dismissal was predicated on a different reason.

27. Canada Business Corporations Act § 4.

28. *Somportex Limited v. Philadelphia Chewing Gum Corporation*, E.D. Penn., 318 F.Supp. 161, 164 (1970), *aff'd* 3d Cir., 453 F.2d 435 (1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972) (citing *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895)); 45 Am.Jur.2d *International Law* § 7 (1969) (citations omitted).

29. *Bata v. Bata*, Del.Supr., 163 A.2d 493 (1960), *cert. denied*, 366 U.S. 964, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1961)(holding that a Holland judgment was entitled to the same binding effect in Delaware as it would have had in Holland).

30. *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng. Co.*, Del.Supr., 263 A.2d 281, 282–83 (1970)(holding that the trial court abused it

discretion in denying the stay of a Delaware action in view of the pendency of an earlier filed Alabama action).

31. *States Marine Lines v. Domingo*, Del.Supr., 269 A.2d 223, 225 (1970) (where a Philippine citizen brought a wrongful death action in Delaware based on a marine accident that occurred in the Philippines).

32. "It is not unusual for courts to wrestle with open questions of law of sister states or foreign countries." *Taylor v. LSI Logic Corp.*, Del.Supr., 689 A.2d 1196, 1200 (citations omitted).

33. *Id.* at 1201.