Mark ISON and Karen Ison, as parents and natural guardians of Blake Ison; and Mark Ison and Karen Ison Individually; Andrea Reilly, as parent and natural guardian of Jesse Hanham, and Andrea Reilly, Individually, Plaintiffs Below, Appellants,

v.

E.I. DUPONT DE NEMOURS AND COMPANY, INC., Defendant Below, Appellee.

Matthew Bowen and Melissa Ellis, as parents and natural guardians of Emily Bowen and Matthew Bowen and Melissa Ellis, Individually; Martin Griffin and Trudi Griffin, as parents and natural guardians of Darren Griffin; and Martin Griffin and Trudi Griffin, Individually, Plaintiffs Below, Appellants,

v.

E.I. DuPont de Nemours and Company, Inc., Defendant Below, Appellee.

Michael Brown and Lindsay Brown, as parents and natural guardians of Philip Brown and Michael Brown; and Lindsay Brown, Individually; Graham Copland and Susan Copland, as parents and guardians of Gary Copland; and Graham Copland and Susan Copland Individually; Jonathan Johnstone and Jacqueline Johnstone, as parents and guardians of Jared, Jonathan and Jacqueline Johnstone, Individually; Juveria Memom as parent and guardian of Khalid and Juveria Memon, Individually; Plaintiffs Below, Appellants,

v.

E.I. DuPont de Nemours and Company, Inc., Defendant Below, Appellee.

No. 416, 1998.

Supreme Court of Delaware.

Submitted: March 2, 1999.
Decided: May 25, 1999.

Robert Jacobs, Thomas C. Crumplar (argued), and Vincent J.X. Hedrick, II, of Jacobs & Crumplar, P.A., Wilmington, Delaware; James M. Hughes, of Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, South Carolina; and James L. Ferraro and Ana M. Rivero, of Ferraro & Associates, P.A., Miami, Florida, for Appellants.

James M. Semple, of Morris, James, Hitchens & Williams, Wilmington, Delaware; David Boies (argued), of Boise & Schiller, L.L.C., Armonk, New York; and Patrick W. Lee, Kathryn D. Kirmayer, and William L. Anderson, of Crowell & Moring, Washington, D.C., for Appellee.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

VEASEY, Chief Justice:

In this *forum non conveniens* case, we reverse the trial court's dismissal of a tort action against the defendant. The plaintiffs are foreign families whose claims arise out of alleged birth defects, including blindness, caused by a chemical manufactured by defendant. The injuries allegedly occurred in England, Wales, Scotland and New Zealand by reason of the mothers'

exposure to the chemical when used agriculturally.

In dismissing this action, the trial court listed the convenience factors traditionally used by Delaware courts in analyzing whether to dismiss an action on grounds of *forum non conveniens,* and concluded that, on balance, they favored the defendant. But the trial court did not mention, analyze or apply the central criterion of Delaware Supreme Court jurisprudence: that the defendant must show "overwhelming hardship" if the case is to be dismissed. Rather, the trial court concluded in a brief letter opinion merely that "there is a better forum to prosecute these matters," meaning the various foreign fora.

We hold that a trial court, in applying the doctrine of *forum non conveniens,* may not rest its analysis on the conclusion that "there is a better forum." The court must require the defendant to show that this is one of those rare cases where the drastic relief of dismissal is warranted based on a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship to the defendant.

The fact that the plaintiffs are foreign nationals does not deprive them of the presumption that their choice of forum should be respected. Although that presumption is not as strong in the case of a foreign national plaintiff as in the case of a plaintiff who resides in the forum, we need not rest our decision on that issue because of the defendant's weak showing of hardship. Here the defendant had its principal place of business in Delaware. There were significant contacts between the defendant's activities in Delaware and the product alleged to have caused the harm. These facts, in the context of the analysis of the traditional convenience factors, effectively negate any claim of hardship presented by the defendant sufficient to deprive these plaintiffs of their choice of forum.

### Facts

This is a consolidated case, combining product liability claims filed against E.I. duPont de Nemours and Company, Inc. ("DuPont") in the Superior Court. Prior to consolidation, the plaintiffs sued DuPont in three separate groups, each alleging that the mothers' exposure to Benlate, a DuPont product, caused specific birth defects in their children.[1] DuPont is a Delaware corporation and has its principal place of business in Delaware.

All of the alleged exposures to Benlate occurred outside of the United States, specifically in New Zealand, England, Wales and Scotland. The Ison plaintiffs are from New Zealand and claim that the mothers' exposure to Benlate while employed by the Christchurch City Council in city nurseries and botanic gardens caused specific birth defects in their children.[2] They filed a complaint in the Superior Court, New Castle County, alleging that job-related exposure to Benlate caused the birth defects.[3] They allege that exposure occurred over several years through ingestion, absorption, dust inhalation, resulting from planting Benlate-soaked seedlings, and planting flower bulbs dusted with Benlate. The evidence related to the Ison plaintiffs' exposure to Benlate and their subsequent medical care is located in New Zealand.

The Bowen plaintiffs are two families, one from England and one from Wales, that allege the mothers' use of a retail version of Benlate caused their children's

---

1. All of the children involved in this consolidated case were born with birth defects that resulted in them having either no eyes (anopthalmia) or microscopic eyes (micropthalmia).

2. The Ison plaintiffs are: Mark and Karen Ison, individually and on behalf of their son Blake Ison; and Andrea Riley, individually and on behalf of her son Jesse Hanham.

3. Jesse died on January 8, 1998 from health complications allegedly caused by Riley's exposure to Benlate during her pregnancy.

birth defects.[4] The Brown plaintiffs, four families from Scotland, also claim that the mothers' exposure to the home version of Benlate caused their children's birth defects.[5] The Bowen and Brown plaintiffs also filed suit in Superior Court, New Castle County. All of the Bowen and Brown plaintiffs allege specific exposures to the home-use version of Benlate that occurred in residential (as distinct from job-related) settings during the mothers' pregnancies. The evidence related to the Bowen and Brown plaintiffs' exposures to Benlate, and subsequent medical treatment, is located in Great Britain.

Benlate is a DuPont trademark for a fungicide developed by DuPont primarily for commercial agricultural use. The only active ingredient in Benlate is benomyl, a fungicide used primarily on field crops, fruits, nuts, ornamentals, mushrooms and turfgrass. DuPont first developed benomyl in the late 1960s and registered it in 1972. All of the initial research, development and testing of benomyl was conducted by DuPont in its facilities in and around Wilmington, Delaware. DuPont admits that most of the persons familiar with this development process are either current or former DuPont employees in the United States.

Although Benlate is a DuPont product, DuPont permits other companies to sell it pursuant to contractual arrangements. During the period of exposure alleged by the Bowen and Brown plaintiffs, DuPont's United Kingdom subsidiary ("DuPont (U.K.)") had entered into such a contractual arrangement with Imperial Chemical Industries plc ("I.C.I."), an English agrochemical company, that allowed I.C.I. to market and sell Benlate for home use in the United Kingdom. This arrangement began in 1983 and involved Benlate formulated in France using benomyl manufactured at the DuPont facility in Belle, West Virginia.[6] According to the terms of its contract with DuPont (U.K.), I.C.I. was responsible for, and obtained, the necessary regulatory approval for its sale of Benlate for home use. All of the Bowen and Brown plaintiffs allege that the birth defects at issue resulted from Benlate sold by I.C.I.

During the period of exposure alleged by the Ison plaintiffs, DuPont sold Benlate for commercial agricultural use in New Zealand through its New Zealand subsidiary ("DuPont (N.Z.)"). DuPont (N.Z.) sold the Benlate at issue to the Ison plaintiff's employer, the Christchurch City Council. DuPont (N.Z.) was responsible for, and obtained, the necessary regulatory approval for the sale of Benlate in New Zealand.

### Decision of the Superior Court

DuPont contends that the trial court's dismissal of this action is warranted. The holding set forth in the trial court's letter opinion of four pages is as follows:

In deciding a motion for *Forum Non Conveniens* the Court is bound by *General Foods Corp. v. Cryo–Maid, Inc.,* Del.Supr., 198 A.2d 681 (1964). The Court must look at the six factors listed in that case when deciding such a motion.

The first factor is what law applies. Delaware does not. All of the alleged activities took place in the home land of the plaintiffs.

**4.** The Bowen plaintiffs are: Matthew Bowen and Melissa Ellis, individually and on behalf of their daughter Emily Bowen; and Martin and Trudi Griffin, individually and on behalf of their son Darren Griffin.

**5.** The Brown plaintiffs are: Michael and Lindsey Brown, individually and on behalf of their son Philip; Graham and Susan Copland, individually and on behalf of their son Gray; Jonathan and Jacqueline Johnstone, individually and on behalf of their son Jared; and Juveria Memon, individually and on behalf of her son Khalid.

**6.** Similar litigation involving different plaintiffs is currently pending in a federal district court in West Virginia. *See Slight ex rel. Slight v. E.I. DuPont de Nemours & Co.,* S.D.W.Va., 979 F.Supp. 433 (1997).

The second factor is relative ease of access to proof. Most of the witnesses are in the homeland of the plaintiffs. There is, perhaps, some discovery that must take place in the United States concerning the components of the alleged substance used in England.

The third factor is the availability of compulsory process · for witnesses. Again, most of the witnesses are in England. The manufacturer of the chemical allegedly used is in West Virginia.

The fourth factor is the possibility of reviewing the premises. Again, the activity occurred in the homeland of the plaintiffs. However, that would be easily satisfied with a video, if it was necessary, to view the premises. This is not an important issue in this case.

The fifth factor is the pendency or non-pendency of a similar action or actions in another jurisdiction. To this Court's knowledge the only pending matter is in the Federal District Court of West Virginia.

The sixth factor is other practical considerations which would make trial easy, expeditious, and inexpensive. According to the defendant, it is necessary to join third-party defendants in this case who formulated and distributed the alleged substance that was exposed to the plaintiffs' mothers in this case.

The Court is well aware of the well reasoned opinion entered in September of 1997 in the United States District court of the Southern District of West Virginia by Judge Haden, *Slight ex. rel. Slight v. E.I. DuPont de Nemours & Co.*, 979 F.Supp. 433 (S.D.W.Va.1997). However, this Court believes that Judge Haden placed a great deal of emphasis on the fact that the plaintiff may not be able to afford to prosecute their case in their homeland. However, in this case

there is a pending action in West Virginia. The only connection that this case has to Delaware is that the defendant has its principal place of business here and is incorporated here. In addition, some of the necessary witnesses as to the manufacturer's perhaps distribution and composition of the alleged substance may be either in Delaware or West Virginia or subject to easy access to the Delaware courts.

The Plaintiffs in this case are all residents of other countries; Scotland, England and Wales. However, in *Taylor v. LSI Logic Corporation*, Del.Supr., 689 A.2d 1196 (1997), the Supreme Court of this State held that the cost of prosecution factor standing alone is not determinative of *forum non conveniens* argument. The Court finds the West Virginia case placed a great deal of emphasis on that issue.

Considering all of the factors in *Taylor* and the *General Foods* case the Court believes that there is a better forum to prosecute these matters. In addition, the defendant in this case has agreed to waive the statute of limitations, if necessary, and to accept service of process in the home countries of the plaintiffs. Accordingly, Defendant's Motion to Dismiss Based on *Forum Non Conveniens* is **GRANTED**.[7]

### *Delaware Forum Non Conveniens Jurisprudence*

 Delaware's modern jurisprudence in *forum non conveniens* ("FNC") cases has been consistent. In cases where there is no issue of prior pendency of the same action, our analysis has been guided since at least 1964 by what has come to be known as the *"Cryo–Maid"* [8] factors, most recently set out as follows:

(1) the relative ease of access to proof;

---

7. *Ison, et. al. v. E.I. duPont de Nemours and Co.*, C.A. Nos. 97C–06–093–VAB, 97C–06–094–VAB, 97C–07–113–VAB, (August 28, 1997) (hereinafter referred to as *"Super. Ct. Decision* at __*"*).

8. *General Foods Corp. v. Cryo–Maid, Inc.*, Del. Supr., 198 A.2d 681, 684 (1964).

(2) the availability of compulsory process for witnesses;

(3) the possibility of the view of the premises;

(4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[9]

Nevertheless, the trial court must find "overwhelming hardship" to the defendant if the case is to be dismissed.[10]

We reaffirmed the overwhelming hardship requirement in two recent cases. In *Chrysler First*[11] in 1995 a dismissal on the ground of FNC ordered by Superior Court was reversed, and in 1997 in *Taylor*[12] a dismissal ordered by the Court of Chancery was reversed. In the *Chrysler First* case, this Court, sitting *en Banc*, stated:

A plaintiff's choice of forum should not be defeated except in the rare case where the defendant establishes, through the *Cryo–Maid* factors, overwhelming hardship and inconvenience. It is not enough that all of the *Cryo–Maid* factors may favor defendant. The trial court must consider the weight of those factors in the particular case and determine whether any or all of them truly cause both inconvenience and hardship. The Superior Court did not use this standard and the decision granting its motion to dismiss, therefore, must be reversed.[13]

In *Taylor* we held that the trial court must find that the defendant would likely suffer overwhelming hardship and that it was error to predicate dismissal on a finding that another court would be a "more appropriate forum." *Taylor* involved a Canadian plaintiff and Canadian law, although the parent corporate defendant was incorporated in Delaware. It was the trial court's failure to address and properly apply the overwhelming hardship doctrine that resulted in the reversal.[14]

### Forum Non Conveniens Law in Other Jurisdictions

The seminal United States Supreme Court cases on FNC were the 1947 com-

---

**9.** *Taylor v. LSI Logic Corp.*, Del.Supr., 689 A.2d 1196, 1198–99 (1997). Note also in *Taylor* the specific reference to relative docket congestion as a potential issue under factor (6):

The Court of Chancery did not predicate its decision upon the inherent power of a trial court to control its own docket, manage its affairs, achieve the orderly disposition of its business and promote the efficient administration of justice. We do not decide this question, but we note that nothing we decide herein is intended to preclude such an argument from being made in a proper case.

689 A.2d at 1201 (footnotes omitted).

**10.** This doctrine goes back at least to 1965 in the case of *Kolber v. Holyoke Shares*, Del. Supr., 213 A.2d 444, 446–47 (1965). *See also Williams Gas Supply Co. v. Apache Corp.*, Del. Supr., 594 A.2d 34, 36 (1991); *Miller v. Phillips Petroleum Co. Norway*, Del.Supr., 537 A.2d 190, 202 n. 24 (1988); *States Marine Lines v. Domingo*, Del.Supr., 269 A.2d 223,

225 (1970); *Parvin v. Kaufmann*, Del.Supr., 236 A.2d 425, 427 (1967).

**11.** *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. Partnership*, Del.Supr., 669 A.2d 104, 108 (1995).

**12.** 689 A.2d at 1197–98.

**13.** 669 A.2d at 105.

**14.** On remand, the Court of Chancery dismissed, citing the principles of comity, after finding that it had concurrent jurisdiction with Canadian courts for the issue presented. *Taylor v. LSI Logic Corp.*, Del. Ch., C.A. No. 13915, 1998 WL 51742 (Feb. 3, 1998). This Court affirmed the dismissal, but on different grounds, finding that the Canadian law at issue actually required *adjudication* in a Canadian court, leaving the Court of Chancery with no subject matter jurisdiction. *Taylor v. LSI Logic Corp.*, Del.Supr., 715 A.2d 837 (1998).

panion cases of *Gulf Oil Corp. v. Gilbert*[15] and *Koster v. Lumbermens Mutual Casualty Co.*[16] Those cases set forth the convenience factors that have been used as guidelines in state and federal cases ever since. Those guidelines are similar to the *Cryo–Maid* factors.

The United States Supreme Court first considered the doctrine of FNC as applied to foreign plaintiffs in *Piper Aircraft v. Reyno.*[17] In *Piper Aircraft*, the Supreme Court set up a three-part analysis for dismissing such cases under FNC. First, the defendant must be amenable to process in the alternate forum.[18] Second, the remedy offered by the alternate forum must not be "clearly inadequate or unsatisfactory." [19] Third, if these prongs are satisfied, the trial court must balance certain private and public interest factors to determine whether dismissal is appropriate.[20]

In *Piper Aircraft*, the Supreme Court noted that a court should accord less deference to a plaintiff's choice of forum when that forum is not the plaintiff's home forum.[21] This is partly because the court has less reason to imply that the plaintiff chose the forum out of convenience rather than other factors.[22] It has been suggested that foreign plaintiffs may be motivated by important relative benefits of litigating in the United States, including more favorable law, liberal discovery, contingent fees, high verdicts and procedural advantages.[23]

In *Piper Aircraft*, the United States Supreme Court distinguished FNC claims brought by domestic plaintiffs from those brought by foreign plaintiffs, concluding that a foreign plaintiff's choice of forum is entitled to less deference than that of a domestic plaintiff. It had several policy reasons for such a finding, including a fear that foreign plaintiffs bring suit in U.S. courts more to take advantage of U.S. tort law than for maximum convenience.[24]

In *Piper Aircraft*, the Court noted that in most cases where a plaintiff brings suit in his or her home forum, convenience can be presumed.[25] When a plaintiff brings suit in a foreign forum, this presumption is diminished.[26] In holding that claims of foreign plaintiffs are entitled to less deference, the Court expressed its fear that, because plaintiffs may be filing in the United States to take advantage of more favorable laws, American courts would be overburdened by foreign litigation absent this rule.[27]

---

**15.** 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

**16.** 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

**17.** 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *see* Douglas W. Dunham and Eric F. Gladbach, *Forum Non Conveniens and Foreign Plaintiffs in the 1990s*, 24 Brook. J. Int'l L. 665 (1999).

**18.** *Piper Aircraft*, 454 U.S. at 254, 102 S.Ct. 252.

**19.** *Id.* at 254 n. 22, 102 S.Ct. 252.

**20.** *Id.* at 241 n. 6, 102 S.Ct. 252.

**21.** *Id.* at 255–56, 102 S.Ct. 252.

**22.** *Id.* In fact, the Supreme Court flatly rejected the Third Circuit's decision that FNC is never appropriate when the law of the alternate forum is less favorable. The Supreme Court noted that this would render FNC impotent as plaintiffs often choose the forum with the most advantageous law. *Id.* at 249, 102 S.Ct. 252.

**23.** *See* the conclusion of Dunham and Gladbach, *supra* note 16:

> Foreign plaintiffs will almost certainly continue to file products liability actions in American courts, instead of their local fora, in order to take advantage of the more favorable substantive law and procedural rules available in the United States. In response, American courts will likely continue to dismiss most such actions based on the flexible doctrine of forum non conveniens.

**24.** 454 U.S. at 256 n. 24, 102 S.Ct. 252.

**25.** *Id.* at 255–56, 102 S.Ct. 252.

**26.** *Id.* at 256, 102 S.Ct. 252.

**27.** The Court stated as follows:

> Upholding the decision of the Court of Appeals would result in other practical prob-

State courts traditionally have formed their own FNC laws. Absent federal statutory law preempting state FNC standards,[28] many states have deviated from the standard set in *Piper Aircraft*, which tends significantly to disfavor foreign plaintiffs.[29]

We believe it is instructive to examine the jurisprudence of three states as examples of the various approaches taken by individual state courts considering *Piper Aircraft*. California has adopted a strong form of the *Piper Aircraft* standard; Connecticut has acknowledged the *Piper Aircraft* standard, but is closely aligned with Delaware jurisprudence; and Texas has completely abolished the doctrine of FNC.

In *Stangvik v. Shiley Incorporated*,[30] the California Supreme Court granted the manufacturer defendant's application of FNC in a case brought by Swedish and Norwegian plaintiffs, even though the products at issue were designed, manufactured, tested and packaged in California. The California Supreme Court acknowledged lower court decisions that stated that a plaintiff's choice of forum should rarely be disturbed, but noted that the justifications for these rulings were that "(1) if the plaintiff is a resident of the jurisdiction in which the suit is filed, the plaintiff's choice of forum is presumed to be convenient ... and (2) a state has a strong interest in assuring its own residents an adequate forum for the redress of grievances ...." [31] Finding that neither justification applied to a suit brought by foreign plaintiffs, the Court held that "under the rule laid down in Piper, the fact that plaintiffs chose to file their complaint

---

lems. At least where the foreign plaintiff named an American manufacturer as a defendant, a court could not dismiss the case on the grounds of forum non conveniens where dismissal might lead to an unfavorable change of law. The American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts.

*Id.* at 251–52, 102 S.Ct. 252 (footnotes omitted).

**28.** State courts are not preempted by federal law in the context of international litigation between private parties unless a federal law, treaty or constitutional provision applies. In *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the United States Supreme Court rejected the universal application of a federal common law. In areas of uniquely federal concern, however, the Court has found that federal common law does exist. One of these areas is foreign relations. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). But this doctrine does not apply when the litigants are private foreign parties as distinct from sovereign entities. *See* Laurel E. Miller, comment, *Forum Non Conveniens and State Control of Foreign Plaintiff Access to U.S. Courts in International Tort Actions*, 58 U. Chi. L. Rev. 1369, 1392 (1991):

Courts use the forum non conveniens doctrine as a tool for controlling foreign plaintiff access to forums in the United States. State have strong interests in deciding when to adjudicate actions involving corporations incorporated and doing business under state law. Thus, states must be able to apply their own forum non conveniens rules in their courts, or to reject the doctrine altogether.... The best solution, therefore, is for the states to serve as "laboratories of federalism" in which their courts and legislatures may experiment with a range of options.

**29.** Federal courts are bound to follow the *Piper Aircraft* standard. *See, e.g., Gschwind v. Cessna Aircraft Co.*, 10th Cir., 161 F.3d 602, 606 (1998); *Alfadda v. Fenn*, 2d Cir., 159 F.3d 41, 45 (1998); *Kamel v. Hill–Rom Co., Inc.*, 7th Cir., 108 F.3d 799, 803 (1997); *Creative Technology, Ltd. v. Aztech System Pte, Ltd.*, 9th Cir., 61 F.3d 696, 703 (1995); *Mercier v. Sheraton Int'l Inc.*, 1st Cir., 981 F.2d 1345, 1354 (1992); *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 5th Cir., 955 F.2d 368, 373 (1992); *Lacey v. Cessna Aircraft Co.*, 3d Cir., 932 F.2d 170, 178–79 (1991); *Stewart v. Dow Chemical Co.*, 6th Cir., 865 F.2d 103, 106 (1989); *Sigalas v. Lido Maritime, Inc.*, 11th Cir., 776 F.2d 1512, 1519 (1985); *Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, D.C.Cir., 717 F.2d 602, 605 (1983).

**30.** 54 Cal.3d 744, 1 Cal.Rptr.2d 556, 819 P.2d 14 (1991).

**31.** *Id.*, 1 Cal.Rptr.2d 556, 819 P.2d at 20 (citations omitted).

in California is not a substantial factor in favor of retaining jurisdiction here." [32]

The Supreme Court of Connecticut, in *Picketts v. International Playtex, Inc.,*[33] in a well-reasoned 1990 opinion, analyzed the standing of foreign plaintiffs in light of *Piper,* but reversed the trial court's FNC dismissal that had been predicated in part on that basis. In a case involving Canadian plaintiffs suing the American parent company of a Canadian corporation for products liability, then Chief Justice Peters, writing for the majority, stated the Connecticut Court's reasoning cogently as follows:

> [T]he central principle of the forum non conveniens doctrine [is] that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." ... [I]nvocation of the doctrine of forum non conveniens is a "drastic remedy" ... which the trial court must approach with caution and restraint.... The plaintiff's choice of forum, which may well have been chosen precisely because it provides the plaintiff with certain procedural or substantive advantages, "should be respected unless equity weighs strongly in favor of the defendant."
>
> * * *
>
> Even though the plaintiffs' preference has a diminished impact because the plaintiffs are themselves strangers to their chosen forum ... Connecticut continues to have a responsibility to those foreign plaintiffs who properly invoke the jurisdiction of this forum.... [34]

In stark contrast to California and Connecticut, the Texas Supreme Court has created a judicial gloss on Texas statutory law that is instructive. In *Dow Chemical Co. v. Castro Alfaro,*[35] a group of Costa Rican agricultural workers sued Dow and Shell Oil for injuries allegedly caused by pesticides manufactured in the United States by the defendant corporations and shipped to Costa Rica, even after the E.P.A. banned the use of these pesticides in the United States. The Texas Supreme Court, in a 1990 decision containing a majority opinion, two separate concurrences and four separate dissents, decided that the Texas legislature had statutorily abolished the doctrine of FNC as applied in the Texas state courts for wrongful death or personal injury actions with a genesis beyond Texas' borders.[36]

That Texas statute provides that a foreign plaintiff may bring a suit in Texas for injuries outside of Texas if (1) the cause of action is available in either the foreign jurisdiction or Texas, (2) the action is not time barred, and (3) the foreign jurisdiction has equal treaty rights with the United States.[37] The Texas Supreme Court found that this section prevents a defendant from invoking the doctrine of FNC. Neither the majority opinion nor the two concurrences make any reference to *Piper Aircraft,* but Justice Doggett, in his concurrence sums up the general attitude of the majority towards the FNC doctrine in general:

> Both as a matter of law and of public policy, the doctrine of forum non conveniens is without justification.... In fact, the doctrine is favored by multinational defendants because a forum non conveniens dismissal is often outcome-determinative, effectively defeating the claim

32. *Id.*

33. 215 Conn. 490, 576 A.2d 518 (1990).

34. *Picketts,* 576 A.2d at 524–25 (citations omitted).

35. Tex.Supr., 786 S.W.2d 674 (1990), *cert. denied,* 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991).

36. *Id.* at 679.

37. *See* V.T.C.A., *Civil Practice & Remedies Code* § 71.031. Although § 71.031 was enacted in 1985, the *Dow* Court traced its statutory predecessors back to a law originally enacted in 1913. *Dow,* 786 S.W.2d at 675–676.

and denying the plaintiff recovery.[38]

The majority of the *Dow* Court seemed to have taken a view that its primary responsibility is to ensure that multinational corporations not be allowed to use procedural methods to avoid any real substantive review of their allegedly harmful actions by forcing trial to take place in foreign jurisdictions where litigation, while not per se barred, is much more difficult for plaintiffs to pursue.

Since the Texas Supreme Court decision in *Dow* was based on its own controversial construction of the 1985 Texas statute (which Delaware does not have and which has since been modified[39]), it need not detain us long. We do note, however, that we would not be inclined to adopt as a matter of case law the reasoning of the majority and concurring opinions in the *Dow* case. In Delaware jurisprudence there is a proper place for dismissals based on *forum non conveniens*. The instant case is not, however, one of those rare cases where dismissal is warranted.

█ The standard articulated by the Connecticut Supreme Court correctly accepts the somewhat lowered burden imposed on defendants attempting to use FNC in an action brought by foreign plaintiffs, but balances that against the important right of any plaintiff to litigate in his or her choice of forum. That approach recognizes the viability of the FNC doctrine in rare cases and the strong showing a defendant must make to justify the "drastic remedy" of dismissal, even though

according less weight to the foreign plaintiff's choice of forum than that accorded a resident or other domestic plaintiff.

Although *Picketts* turned on the issue of whether foreign plaintiffs deserve less deference than domestic plaintiffs in their choice of forum, the Connecticut Supreme Court's analysis of the defendant's burden is consistent with the "overwhelming hardship" language of the Delaware jurisprudence. That phrase may be a unique Delaware formulation originally appearing in the 1965 case of *Kolber v. Holyoke Shares, Inc.*,[40] in which the court cited the U.S. Supreme Court decision in *Gulf Oil Corp. v. Gilbert* to the effect that "unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.[41]

## *"Overwhelming Hardship" Applied to the Instant Case*

█ The "overwhelming hardship" standard, requiring the defendant to make a strong showing, is difficult for a defendant to prove, but it is not preclusive. It simply means that the defendant must show that the case is one of the rare cases where the drastic relief of dismissal is warranted based on a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship to the defendant. Certainly this defendant has not sustained its burden, even though the plaintiffs are foreign and have no connection to this forum. This is not a case of

---

38. *Dow*, 786 S.W.2d at 682 (citations omitted).

39. In 1993, the Texas legislature codified the doctrine of FNC for claims brought under chapter 71 of the Civil Practice and Remedies Code. *See* V.T.C.A., *Civil Practice & Remedies Code* § 71.051. The Texas Supreme Court has since recognized that § 71.051 limits its reading of § 71.031. *See In re Smith Barney, Inc.*, Tex.Supr., 975 S.W.2d 593, 597 (1998) ("the Legislature has recently reaffirmed the forum non conveniens doctrine by amending Section 71.051 of the Civil Practice and Remedies Code to alter our holding in Dow Chemical Co. v. Alfaro . . . . ").

40. Del.Supr., 213 A.2d 444, 447 (1965) ("the ultimate defeat of the plaintiff's choice of forum[ ] may occur only in the rare case in which the combination and weight of the factors to be considered balance *overwhelmingly* in favor of the defendant. *Compare* Gulf Oil Corp. v. Gilbert, 330 U.S. 501[, 67 S.Ct. 839, 91 L.Ed. 1055] (1947).") (emphasis added).

41. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (emphasis added).

weighing the foreign plaintiffs' choice of forum (whether it be "forum shopping" or not) against a defendant whose only connection is that it is incorporated in Delaware. We need not express an opinion on such a case because it is not before us. In this case, the key factors are that the defendant's principal place of business is in this forum and there are significant contacts here with the alleged defective product. In reviewing this case, we consider the *Cryo–Maid* factors in the context of those key factors.[42]

■ The first *Cryo–Maid* factor is relative ease of access to proof. The trial court found that most of the witnesses are in the homelands of the plaintiffs, although it acknowledged that some discovery in Delaware would be necessary.[43] Although evidence from the plaintiff's homelands certainly will be necessary, a great deal of evidence not subject to DuPont's control exists in the United States. In any event, the Hague Convention in the United Kingdom[44] and legislative acts in New Zealand[45] provide American courts with the ability to compel the production of evidence (testimonial and physical) in the plaintiffs' homelands. These circuitous routes to accessing evidence are somewhat cumbersome, and litigation in Delaware would place most of this burden on DuPont. But this factor does not present DuPont with an overwhelming hardship.

■ The second *Cryo–Maid* factor, the availability of compulsory process for witnesses, is closely related to the first. The trial court found that most of the witnesses are in England, while others are in West Virginia.[46] But again, while the non-party witnesses to the injury obviously are located in the plaintiffs' home countries, many other witnesses are located in Delaware. DuPont, as a party to the action, must make its current employees available for testimony, but the plaintiffs may wish to call ex-employees with knowledge of the development of Benlate and benomyl. This presents a mirror-image problem that does not necessarily predominate in favor of any particular forum, much less prove an overwhelming hardship for DuPont should it be forced to litigate in Delaware.[47]

The trial court found that the third *Cryo–Maid* factor, view of the premises, did not predominate in favor of DuPont. It found that a videotape of the premises where the injuries allegedly occurred would suffice to satisfy this factor.[48] DuPont does not challenge this determination in response to the plaintiffs' appeal, but does note that this factor alone cannot be dispositive in a FNC analysis.

■ The fourth *Cryo–Maid* factor concerns the choice of laws and Delaware's interest in the litigation. This issue must be addressed squarely on remand. The trial court decided that Delaware substantive law does not apply since the injuries all occurred in the plaintiffs' home countries.[49] The plaintiffs correctly note that the application of the law of the place of injury is a rebuttable presumption that they can defeat with a showing that Delaware has a more significant relationship to

---

42. *See* text accompanying note 9, *supra*.

43. *Super. Ct. Decision* at 2.

44. *See* Hague Convention on Taking of Evidence Abroad in Civil and Commercial Matters, March 18, 1970, 23 U.S.T. 2555, 28 U.S.C. § 1781.

45. *See* Evidence Amendment Act, No. 2, 1980, Part IV(NZ); Evidence Act, 1908, §§ 48A–48F (NZ). Other statutes provide DuPont with access to necessary non-privileged information held by government agencies. *See* Official Information Act, 1982(NZ); Privacy Act, 1993(NZ).

46. *Super. Ct. Decision* at 2. We assume the trial court meant to say United Kingdom and New Zealand rather than "England."

47. *See Taylor*, 689 A.2d at 1199.

48. *Super. Ct. Decision* at 2.

49. *Id.*

the action.[50] They contend that DuPont's research and development of benomyl in Delaware is the key event in these alleged injuries. They further argue that the place of injury is fortuitous because the product was defective when it left the United States.

In making this argument, the plaintiffs seem to misapprehend the legal concept of fortuity. Most cases that discuss a fortuitous place of injury limit their discussion to whether the location of the *victim* (not the product) was fortuitous.[51] Airplane accidents are an example of fortuitous injuries because the victim often has no connection to the place of the crash.[52] In this case, the plaintiffs cannot claim that the alleged injuries occurred fortuitously in their home countries.[53]

It is significant for choice of law purposes that the United Kingdom and New Zealand both have regulatory agencies that had approved Benlate for domestic sale. All warnings and labels on the products that caused the alleged injuries were consistent with the requirements of these regulatory agencies. The home countries have a significant interest in setting the safety standards by which a product sold in their country will be judged.

■ Plaintiffs correctly point out that Delaware has some interest in regulating the products developed within its borders,

but this interest does not suffice to rebut the presumption that the United Kingdom and New Zealand have more significant relationships to the alleged injuries.[54] Considering the place of the alleged injuries, the place of the treatments for these injuries and the regulation of the product by the home countries, the trial court may well have been correct in its initial determination that Delaware law does not apply to these claims. Whether or not the trial court ultimately decides that Delaware law does not apply, this finding alone would have been insufficient for dismissal on the ground of FNC.[55] Now that we have determined that this action must go forward in Delaware, the trial court should consider afresh the choice of law questions on specific issues as the case develops and a full factual record is presented. In view of our decision herein, the trial court's initial determination on choice of law issues for FNC purposes is not the law of the case for purposes of considering the merits.

■ The fifth *Cryo–Maid* factor concerns the pendency or non-pendency of other actions. The trial court noted that the only pending matter is in Federal District Court in West Virginia.[56] Plaintiffs correctly note that the West Virginia action cannot be considered in this analysis because it involves different plaintiffs.[57]

50. *See Travelers Indemnity Co. v. Lake*, Del. Supr., 594 A.2d 38, 46 (1991).

51. *See Jaurequi v. John Deere Co.*, 7th Cir., 986 F.2d 170, 175 (1993); *Allison v. ITE Imperial*, 5th Cir., 928 F.2d 137, 142 (1991). Cf. *Le Jeune v. Bliss–Salem, Inc.*, 3d Cir., 85 F.3d 1069, 1071 (1996) (Accident was not fortuitous because it occurred in a fixed steel mill in Delaware.).

52. *See Foster v. United States*, 11th Cir., 768 F.2d 1278, 1282 (1985).

53. Plaintiffs cite one case where a court found that an injury was fortuitous in the plaintiff's home jurisdiction, *Kozoway v. Massey–Ferguson, Inc.*, D. Colo., 722 F.Supp. 641, 643 (1989). But the 10th Circuit seemed to disapprove of this result in a later case. *See Dorman v. Emerson Elec. Co.*, 10th Cir., 23 F.3d 1354 (1994) (declining to follow the *Kozoway*

analysis in an similar action brought in Missouri.).

54. *See In re Richardson–Merrell, Inc.*, S.D. Ohio, 545 F.Supp. 1130, 1135 (1982), *aff'd as modified sub nom. Dowling v. Richardson–Merrell, Inc.*, 6th Cir., 727 F.2d 608 (1984).

55. *See Taylor*, 689 A.2d at 1200.

56. *Super. Ct. Decision* at 3. The trial court refers to *Slight ex rel. Slight v. E.I. DuPont de Nemours & Co.*, S.D.W.Va., 979 F.Supp. 433 (1997).

57. *See Taylor*, 689 A.2d at 1199 ("there is a later-filed action pending in California involving the same subject matter *and the same parties.*" (emphasis supplied)); *LaCorte Elec. Const. & Maint., Inc. v. Centron Security Sys., Inc.*, N.D.N.Y., 894 F.Supp. 80, 85 (1995).

DuPont does not dispute this point, but rather argues that the non-pendency of a similar action should not be fatal to a motion for dismissal citing FNC. In the abstract, this is a correct observation, but here the point must be evaluated in the overall context of our holding.

In *Taylor*, we stated that "judicial discretion is to be exercised sparingly where, as here, there is no prior action pending elsewhere."[58] In the instant case, no other action is pending between the same parties in another jurisdiction. DuPont contends that this is irrelevant because it results from the plaintiffs' own choice and that, due to the minimal discovery that has taken place, it would cause no real hardship to the plaintiffs. The plaintiffs argue that this is dispositive and should automatically result in denial of the motion to dismiss. Following *Taylor*, we apply an enhanced level of scrutiny to situations where the trial court dismisses based on FNC and no prior actions are pending in alternate fora. Therefore, this "pending action" factor is neither dispositive nor irrelevant.

 Most jurisdictions, including Delaware, approach the "pending actions" analysis with a view toward judicial economy in cases with prior pending actions. As in *McWane Cast Iron Pipe*, courts are more likely to dismiss a cause of action based on FNC if other jurisdictions are hearing a similar case, because it would be a waste of judicial resources to prosecute the same action multiple times.[59] By contrast, in cases where no prior actions are pending, we focus on the possible cost and

delay to the plaintiff if dismissal forces a brand new action in an alternate forum.[60]

In *Piper Aircraft*, the United States Supreme Court applied FNC to dismiss a cause of action where the plaintiffs had already instituted a similar cause of action in the United Kingdom.[61] But the Court did not decide *Piper Aircraft* on the basis of prior pending actions. Instead, it looked to the existence and viability of an alternative forum, not the existence and viability of a prior filed action.[62] By not focusing on the existence of a prior filed action, *Piper Aircraft* at least implicitly prevents plaintiffs from abstaining from filing an action in their home jurisdiction just so they can argue that no prior filed action existed and that dismissal under FNC is precluded.

The trial court must look at the cost and prejudice that would result from a dismissal in a case where no other actions are pending. For example, the trial court should consider how far discovery has commenced and whether this process would have to begin anew in the alternate forum. If the trial court did this sort of analysis in this case, it is not clear from its brief opinion. A trial court must analyze the effect of the non-pendency of similar actions involving the same parties in alternate jurisdictions in light of the burden on the defendant to show overwhelming hardship.

The sixth *Cryo–Maid* factor is "all other practical problems." Two stand out in this case. First, as the trial court noted, DuPont claims that there are possible third-party defendants not subject to impleader in any action in Delaware.[63] Second, Du-

---

**58.** 689 A.2d at 1199; *see also Parvin*, 236 A.2d at 427 (1967). *Compare McWane Cast Iron Pipe Corp. v. McDowell Wellman Engineering Co.*, Del.Supr., 263 A.2d 281, 283 (1970) (noting that discretion should be exercised freely to dismiss or stay where there is a prior pending action.).

**59.** 263 A.2d at 283; *see also Banco Nominees, Ltd. v. Iroquois Brands, Ltd.*, D.Del., 748 F.Supp. 1070, 1078 (1990); *Jennings v. Boe-*

*ing Co.*, E.D.Pa., 660 F.Supp. 796, 807, *aff'd* 3d Cir., 838 F.2d 1206 (1988).

**60.** *Taylor*, 689 A.2d at 1199.

**61.** *Piper Aircraft*, 454 U.S. at 240 n. 2, 102 S.Ct. 252.

**62.** *Id.* at 254 n. 22, 102 S.Ct. 252.

**63.** *Super. Ct. Decision* at 3.

Pont has agreed to waive any jurisdictional or statutes of limitation defenses that it might possess in the alternate fora.

 The alleged third-party defendants are I.C.I. and the employers of the mothers of the New Zealand plaintiffs. DuPont argues that any judgment against it in a Delaware court would do nothing to protect it against future litigation based on the same claims against these third-party defendants. For example, if the United Kingdom plaintiffs chose to sue I.C.I. in England, I.C.I. could implead DuPont and DuPont could be held liable again for the same injuries. Due to similar concerns, courts in other jurisdictions in certain factual settings have found substantial prejudice based on the fact that a defendant could not implead potential third-party defendants.[64]

Although this factor initially appears to weigh in favor of DuPont, it did not present any evidence that this factor is more than illusory. As the plaintiffs noted, DuPont never acted to implead any third-party defendant, and we are not persuaded that any inability to do so would be an overwhelming hardship.[65] In response to a question at oral argument in this Court about whether the distribution contracts DuPont signed with these potential third-party defendants included an indemnification clause that would render this issue

moot, counsel for DuPont answered that he did not know. Considering the state of the record on this issue, we cannot say that DuPont has proven that the inability to implead potential third-party defendants is a factor that would lead us to find that it is likely to suffer overwhelming hardship.

The second important practical problem is one that has been avoided through DuPont's willingness to waive any jurisdictional or statutes of limitation defenses that it might possess in the alternate fora. This removes any doubt that the plaintiffs would be able to assert their claims in their home countries. Of course, this factor relates to the convenience of the plaintiffs, not to the inconvenience of the defendant. Thus, it balances in favor of DuPont, but is not probative of the overwhelming hardship issue.

 The plaintiffs assert several other practical considerations, most notably the much higher cost of prosecution of products liability cases in the United Kingdom and New Zealand.[66] This argument lacks significant legal merit for two reasons. First, as noted above, the overarching factor that a trial court must consider in an FNC analysis is substantial hardship to the *defendant*. Second, even though Delaware jurisprudence does accord the cost of prosecution factor some weight,[67] in

64. *See, e.g., Piper Aircraft,* 454 U.S. at 259, 102 S.Ct. 252 ("The District Court correctly concluded that the problems posed by the inability to implead potential third party defendants clearly supported holding the trial in Scotland."); *Kilvert v. Tambrands, Inc.,* S.D.N.Y., 906 F.Supp. 790, 795 (1995) (involving inability to implead British subsidiary).

65. We note that DuPont raised the issue of inability to implead third parties before the District Court in West Virginia. *See Slight,* 979 F.Supp. at 441. The court there found that this factor, if *proved,* favors dismissal, but that DuPont had failed to present sufficient evidence of third parties involved in the litigation or evidence of the extent of those third parties' liability. *Id.* Furthermore, the court pointed to precedent holding that the inability to implead third parties does not

mandate dismissal. *Id.* (citing *Morehead v. Barksdale,* 4th Cir., 263 F.2d 117 (1959)).

66. We note that the record does not reflect either party raising the issue of docket congestion as a practical consideration for the trial court to weigh. *See* note 9, *supra.*

67. *See Taylor,* 689 A.2d at 1200 ("One practical consideration is plaintiff's argument that she may be subjected to the English 'loser pays' rule if forced to litigate in Canada."). *Cf. Magnin v. Teledyne Continental Motors,* 11th Cir., 91 F.3d 1424, 1430 (1996) ("as cherished as contingency fee arrangements have become to some plaintiffs and their attorneys, [the plaintiff] has not cited us to any Supreme Court or court of appeals decision giving such considerations substantial weight in forum non conveniens analysis.").

this case the trial court considered the difficulty that the plaintiffs might encounter in pursuing this claim in their home countries due to the unavailability of contingency fee arrangements. It decided that this did not swing the balance back in favor of the plaintiffs.[68]

Although the other practical considerations weigh in favor of DuPont, the six *Cryo–Maid* factors together do not prove that DuPont would suffer overwhelming burden or inconvenience if forced to litigate in Delaware. The fact that DuPont's principal place of business is in Delaware and the fact that the product at issue was researched and developed in Delaware effectively preclude a finding on this record that DuPont would suffer overwhelming hardship by litigating in Delaware.

### Conclusion

Considering the cursory nature of the trial court's opinion and its failure to use the appropriate standard of overwhelming hardship to the defendant, we find that the trial court erred as a matter of law in failing to apply the correct standard for dismissal of this cause of action pursuant to the doctrine of *forum non conveniens*. Accordingly, we reverse the decision of the trial court and remand this case to the Superior Court for further proceedings consistent with this opinion.

---

68. We note that the trial court addressed the West Virginia district court's analysis and found that it "placed a great deal of emphasis on [the cost of prosecution] issue." *Super. Ct. Decision* at 3.