# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ETHICA CORPORATE FINANCE S.r.L, an Italian Limited Liability Company, as successor to ETHICA HOLDING S.P.A., f/k/a ETHICA CORPORATE FINANCE S.p.A., an Italian Corporation, <br><br> Plaintiff, <br><br> v. <br><br> DANA INCORPORATED, a Delaware Corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No.: N17C-10-145 EMD CCLD |

Submitted: May 14, 2018
Decided: August 16, 2018

*Upon Defendant DANA Incorporated's Motion to Dismiss*
***DENIED***
*Upon Plaintiff Ethica Corporate Finance S.r.L.'s Motion to Strike*
***DENIED***

Jon E. Abramczyk, Esquire, Barnaby Grzaslewicz, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Robert L. Sills, Esquire, Emmanuel B. Fua, Esquire, Orrick, Herrington & Sutcliffe LLP, New York, New York, *Attorneys for Plaintiff Ethica Corporate Finance S.r.L*

Daniel B. Rath, Esquire, James S. Green Jr., Esquire, Jennifer L. Cree, Esquire, Landis Rath & Cobb LLP, Wilmington, Delaware, *Attorneys for Defendant Dana Incorporated*

**DAVIS, J.**

## I. INTRODUCTION

This is a breach of contract action assigned to the Complex Commercial Litigation Division of the Court. The action arises out of an agreement regarding the provision of financial advisory services (the "Agreement") by Plaintiff Ethica Corporate Finance S.r.L, ("Ethica") for

Defendant Dana Incorporated ("Dana"). Dana is a Delaware corporation with its headquarters in Maumee, Ohio. Dana is a manufacturer and supplier of products in the motor vehicle industry. Ethica is an Italian limited liability company that provides financial advisory services. Ethica is located in Milan, Italy.

Ethica alleges that this civil action is a case regarding unpaid financial advisory fees. According to Ethica, Ethica and Dana entered into the Agreement under which Ethica provided Dana with services relating to Dana's acquisition of the Brevini Group. Ethica contends that it performed substantial and valuable work under the Agreement; however, Dana terminated the Agreement and refused to compensate Ethica in accordance with the terms of the Agreement.

On October 12, 2017, Ethica filed suit in this case (the "Complaint"). In response, Dana filed the Motion to Dismiss (the "Motion"). Through the Motion, Dana seeks to dismiss the suit for improper venue under *forum non conveniens*. Ethica opposes the Motion. Ethica also filed Ethica Corporate Finance S.r.L.'s Motion to Strike Portions of Dana Incorporated's Reply Brief and Related Filings (the "Motion to Strike").

For the reasons stated below, the Court **DENIES** the Motion and **DENIES** the Motion to Strike.

## II. RELEVANT FACTS

Ethica is a financial advisory firm that provides merger and acquisition advice in the Italian market.[1] Since 2010, Ethica has provided advice in over 50 mergers and acquisitions aggregating over €3.5 billion.[2] Dana is a Delaware corporation with its principle place of

---

[1] Compl. ¶ 7.
[2] *Id.*

2

business in Ohio.[3] Dana is a publicly traded manufacturer and supplier of products for vehicle manufacturers.[4] In 2015, Dana sought Ethica's services regarding a merger and acquisition.[5]

On or about April 10, 2015, representatives from Dana and Ethica met at Ethica's office in Italy.[6] Ethica presented some possible target corporations for Dana.[7] Dana expressed an interest in acquiring O&K Antriebstechnik GmbH, Brevini Power Transmissions S.p.A., and Brevini Fluid Power S.p.A.[8] The two Brevini companies were owned by the Brevini Group.[9] Dana wanted Ethica to facilitate a merger or acquisition with the target companies.[10] Dana and Ethica did not reach an agreement regarding Ethica's compensation. Rather, the parties decided to address compensation at a later time.[11]

On April 23, 2015, Dana instructed Ethica to contact Mr. Brevini, Brevini Group's controlling shareholder.[12] On April 24, 2015, Ethica's representative met with Mr. Brevini and discussed Dana's interest in acquiring Brevini.[13] Ethica, on behalf of Dana, negotiated a non-disclosure agreement with Brevini.[14]

On June 5, 2015, Ethica made a proposal to Dana regarding Ethica's fees. On July 16, 2015, the parties reached an agreement regarding fees. Dana would pay Ethica a "non-refundable retainer of €15,000 per month, following the execution by Dana of a letter of intent

---

[3] *Id.* ¶ 5.
[4] Mot. at 4.
[5] Compl. ¶ 8.
[6] *Id*. ¶ 9.
[7] *Id.*
[8] Mot. at 2.
[9] *Id.*
[10] Compl. ¶ 10.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* ¶ 11.

and continuing until the sooner of six months after execution or closing of the transaction, and a success fee of 0.5% of the enterprise value of Brevini if the acquisition was concluded."[15]

Ethica continued facilitating negotiations between Dana and Brevini.[16]  On September 28, 2015, Dana unilaterally terminated the contract with Ethica.[17]  Dana offered €25,000 for expenses and €200,000 upon Dana's completed transaction with Brevini.[18]  Ethica rejected the offer.[19]

On February 2, 2017, Dana publicly announced the completed purchase of 80% of Brevini's common shares.[20]  Dana also announced that it had the option to purchase the remaining 20% of common shares by 2020.[21]   Dana publicly valued Brevini at €325,000,000 with the assumption of nearly €100,000,000 of debt.[22]

On October 12, 2017, Ethica filed the Complaint.  In the Complaint, Ethica claims: (1) breach of contract; (2) unjust enrichment; and (3) pre-contractual liability.  On February 1, 2018, Dana filed the Motion.  On March 1, 2018, Ethica filed the Opposition to Dana Incorporated's Motion to Dismiss (the "Opposition").  On March 15, 2018, Dana filed the Reply Brief in Further Support of Dana Incorporated's Motion to Dismiss (the "Reply").

Dana attached the Declaration of Francesca Rolla (the "Rolla Declaration") to the Motion.  The Rolla Declaration makes several statements about the Italian legal system and its impact on this civil litigation.  First, the Rolla Declaration states that Italian courts do not follow *stare decisis*; therefore, it is possible that the parties will ask the court to rely on a decision that is

---

[15] *Id.* ¶ 12.
[16] Opp. at 6.
[17] Compl. ¶ 13.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶ 14.
[21] *Id.*
[22] *Id.*

4

inconsistent with well-settled Italian law.[23]  Next, the Rolla Declaration explains the difficulty

Dana could face with discovery based on European Union and Italian law.

As part of the Opposition, Ethica attached the Declaration of Stefano Pastore in Support

of Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint for *Forum Non*

*Conveniens* (the "Pastore Declaration").  Mr. Pastore states that most of the negotiations were

conducted in English.[24]  Further, Matthias Goethe and Mark Schneider were the lead Dana

representatives that communicated with Ethica regarding the Brevini Group.[25]  Mr. Goethe and

Mr. Schneider both hold Ohio phone numbers for business.[26]  Mr. Pastore also states that Ethica

is willing to sign waivers that are necessary to facilitate cross-border transfer of data and

documents subject to Italian data protection laws.[27]  Ethica also agrees to produce its employees

for depositions and will waive the requirement that discovery be sought under the Hague

Convention.[28]

Dana attached the Declaration of Marc Schuett (the "Schuett Declaration") to the Reply.

Mr. Schuett is a senior legal director at Dana.[29]  Mr. Schuett states that he "participated in

meetings in Italy with representatives of Brevini and Ethica" and that the "statements in Dana's

opening brief and in the Francesca Rolla's declaration that most of the witnesses relating to the

Matter are located in Italy are accurate."[30]  Mr. Schuett provided a list of six employees involved

---

[23] Rolla Decl. ¶ 11.
[24] Pastore Decl. ¶ 3.
[25] *Id.* ¶ 4.
[26] *Id.*
[27] *Id.* ¶ 7.
[28] *Id.* ¶ 8.
[29] Schuett Decl. ¶ 1.
[30] *Id.* ¶¶ 5-6.

in negotiations who are located in Italy.[31]  Additionally, Mr. Schuett lists five people involved in negotiations who work for the Brevini Group or no longer work for Dana.[32]

On April 10, 2018, Ethica filed the Motion to Strike.  On May 8, 2018, Dana filed the Response of Dana Incorporated in Opposition to Ethica Corporate Finance's Motion to Strike (the "Opposition to Strike").  Ethica seeks to strike Dana's submission of a proposed draft of the contract at issue in the complaint.  Ethica also seeks to strike the list of employees located in Italy, former employees, and Brevini employees provided in the Schuett Declaration.  Ethica argues that Dana failed to provide this information in the Motion and raising the issues in the Reply prejudices Ethica without an opportunity to respond.

On May 14, 2018, the Court held a hearing (the "Hearing") on the Motion, Opposition, Reply, Motion to Strike, and Opposition to Strike.  The Court took the matter under advisement.

### III. PARTIES' CONTENTIONS

#### A.    MOTION

Through the Motion, Dana seeks to dismiss this civil action for improper venue under the theory of *forum non conveniens*.  Dana argues that this case belongs in an Italian court because: (1) evidence is located in Italy; (2) all witnesses—party and third party—are located in Italy; (3) Italian law governs the dispute; (4) Dana's access to proof in Delaware "would be cumbersome, inefficient, and extremely difficult;" (5) Ethica is a resident of Italy; and (6) damages, if any, were incurred in Italy.

#### B.    OPPOSITION

Ethica argues that Dana fails to meet standard for *forum non conveniens*.  Ethica notes that Dana is a Delaware Corporation with its headquarters in Ohio.  Ethica contends that it

---

[31] *Id.* ¶ 7.
[32] *Id.* ¶ 8.

worked closely with executives from Dana who live and work in Ohio.  Ethica provides that the

parties communicated in English.  Ethica further contends that Delaware courts resolve issues for

foreign law, "particularly where, as here, the applicable foreign law is settled and

uncontroversial."[33]

## IV. DISCUSSION

**A.**    **THE COURT WILL DENY THE MOTION TO STRIKE BECAUSE THE PARTIES HAD A FULL AND FAIR OPPORTUNITY TO ADDRESS ALL FACTUAL AND LEGAL ISSUES AT THE HEARING HELD ON THE MOTION AND OPPOSITION.**

"Moving parties must provide adequate factual and legal support for their positions in

their moving papers in order to put the opposing parties and the court on notice of the issues to

be decided."[34]  Delaware Courts do not favor "sandbagging" in reply briefs.[35]  Sandbagging is

"raising new bases for dispositive relief for the first time in a reply brief."[36]  Courts may

disregard or deem waived any arguments made in a reply brief which was not raised in the

opening brief.[37]

---

[33] Opp. at 3.

[34] *In re Asbestos Litig.*, 2007 WL 2410879, at *1 (Del. Super. Aug. 27, 2007).

[35] *See In re Asbestos Litig.*, 2014 WL 7150472 (Del. Super. Dec. 5, 2014).

[36] *Id.*

[37] Delaware Courts have repeatedly frowned on sandbagging.

> *See, e.g., Murphy v. State,* 632 A.2d 1150, 1152 (Del. 1993) (noting it is "well-settled" in Delaware that failing to raise a legal issue in the text of an opening brief generally waives that claim for that proceeding). *See also State v. Jackson,* 2014 WL 4407844, at *10 (Del. Super. Sept. 3, 2014) ("The Supreme Court disdains sandbagging in reply briefs ..."); *Solway v. Kent Diagnostic Radiology Assoc., P.A.,* 2014 WL 948318, at *2 (Del. Super. Feb. 26, 2014) (dismissing later-raised discovery violation allegations that were not in movant's opening papers); *Paikin v. Vigilant Ins. Co.,* 2013 WL 5488454, at *3 n.12 (Del. Super. Oct. 1, 2013) ("Plaintiffs' additional argument ... was raised for the first time in their reply brief and the Court finds it to be waived, it not having been raised in their initial motion."); *Mateson Chem. Corp. v. Barton,* 2008 WL 142510, at *1 n.5 (Del. Super. Jan. 15, 2008) (refusing to address arguments Defendants raised for the first time in their reply pleading); *Zutrau v. Jansing,* 2013 WL 1092817, at *6 (Del. Ch. Mar. 18, 2013) (failure to raise legal issue in opening brief generally constitutes waiver of ability to raise that issue for that matter). *Cf. Franklin Balance Sheet Inv. Fund v. Crowley,* 2006 WL 3095952, at *4 (Del. Ch. Oct. 19, 2006) (holding movant "is obliged in its motion and opening brief to set forth all of the grounds, authorities and arguments supporting its motion" and "should not hold matters in reserve for reply briefs").

*See In re Asbestos Litigation*, 2014 WL 7150472, at *1 n.5.

Ethica seeks to strike two pieces of information from the Reply. First, Ethica seeks to strike paragraphs seven and eight of the Schuett Declaration which list potential witnesses located in Italy or outside Dana's control.[38] Second, Ethica seeks to strike Exhibit B to the Reply. Dana states that Exhibit B is Ethica's proposed draft of a contract.[39]

The Court finds that Dana should have been more forthcoming in the Motion and its attachments. Dana could have, from the outset, provided the list of witnesses in its opening brief. *Forum non conveniens* requires a defendant to show particular hardships for particular witnesses. The Court, and the parties, know that this type of information is important in determining whether to dismiss for *forum non conveniens* reasons. Rather than providing the specific witnesses that might not cooperate, Dana merely stated in the Motion that "[a]ll third-party witnesses and documents are located [in Italy]."[40] Further, Dana states that "[n]aturally, many of the relevant communications are in Italian, and most, if not all, of the witnesses and documents . . . are located in Italy."[41]

However, while Dana could have identified these witnesses with more particularity in its opening brief, the list of witnesses in the Reply was not a surprise based on the statements made in the Motion. It was logical for Dana to expand and refine the list of witnesses based on the Opposition. Moreover, the parties had the opportunity to address all witness issues (availability, etc.) at the Hearing. As such, the Court will not strike paragraphs seven and eight of the Schuett Declaration for purposes of the Motion.

---

[38] Mot. to Strike at 3-4.
[39] *Id.* at 6.
[40] Mot. at 1.
[41] Mot. at 3

8

Ethica also seeks to strike Exhibit B to the Reply. Exhibit B is a proposed draft of the contract that contains a forum selection clause to the Court of Milano.[42] A forum selection clause is not dispositive on a Court's analysis although a forum selection clause is a factor to consider in a *forum non conveniens* analysis.[43] In this situation, Exhibit B is even less relevant to the analysis as the draft contract is a contract between Dana and Ethica regarding the acquisition of another company and is unsigned. Exhibit B does not heavily weigh in the Court's analysis at this stage of the litigation and the Motion does not indicate any reliance upon a forum selection clause or a written contract. As such, the Court gives the draft contract as much importance as did Dana when it submitted the Motion. For these reasons, the Motion to Strike is denied.

## B. MOTION TO DISMISS IS DENIED

### 1. *Forum Non Conveniens* Legal Framework

*Forum non conveniens* is a judicially created doctrine that allows the Court to exert some control over a foreign plaintiff's access to our forum.[44] *Forum non conveniens* falls under Superior Court Civil Rule 12(b)(3) for improper venue and "empowers a court to decline to hear a case, despite having jurisdiction, where the plaintiff's choice of forum would vex, oppress, or harass the defendant through undue inconvenience, expense, or other hardship."[45]

Dismissal under *foreign non conveniens* is drastic relief and only warranted in "rare cases."[46] To avoid the plaintiff's choice of forum, a defendant must show "with particularity that

---

[42] *See* Reply, Ex. B.
[43] *See USH Ventures v. Glob. Telesystems Group, Inc.*, 1999 WL 463713, at *3 (Del. Super. June 9, 1999) (citing *Mercier v. Sheraton Intern. Inc.,* 1st Cir., 981 F.2d 1345, 1358 (1992)) ("A forum selection clause is a factor to be considered in a Motion for *forum non conveniens*."); *Aveta, Inc. v. Colon*, 942 A.2d 603, 610 (Del. Ch. 2008) (staying an action pending the outcome of a Puerto Rico action based upon *forum non conveniens* despite a forum selection clause designating Delaware as the forum).
[44] *See Ison v. E.I DuPont de Nemours & Co., Inc.*, 729 A.2d 832, 840 (Del. 1999).
[45] *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *12 (Del. Ch. Dec. 1, 2009) (*Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship,* 669 A.2d 104, 106 (Del.1995)).
[46] *See Ison*, 729 A.2d at 842; *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1198 (Del. 1997) ("Delaware courts consistently uphold a plaintiff's choice of forum except in rare cases.").

9

it will be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware."[47] To prevail on *foreign non conveniens*, a defendant must show that the inconvenience and hardship are "so profound" that they "overwhelm" the plaintiff's choice of forum.[48] However, this standard is "not intended to be preclusive. Rather, it is intended as a stringent standard that holds defendants who seek to deprive a plaintiff of her chosen forum to an appropriately high burden."[49]

When determining whether a suit should be stayed or dismissed for *forum non conveniens*, Delaware courts apply different standards depending on the circumstances.[50] Where two cases are filed contemporaneously, or the Delaware case is filed first, or there is no other pending action, the Court examines the motion under the traditional *forum non conveniens* framework, applying the factors set forth in *Cryo-Maid* under an "overwhelming hardship" standard.[51] But, "[i]f the foreign action is the first-filed action, principles of fairness, comity, judicial economy and the possibility of inconsistent results generally favor the granting of a stay."[52] Where the Delaware action is the second-filed to the foreign action, the Court will conduct an analysis under *McWane*.[53]

---

[47] *Pipal Tech Ventures Private Ltd. v. MoEngage, Inc.*, 2015 WL 9257869, at *5 (Del. Ch. 2015) (quoting *Taylor*, 689 A.2d at 1199).

[48] *Pipal*, 2015 WL 9257869, at *10.

[49] *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1105 (Del. 2014), *as revised* (Mar. 4, 2014).

[50] *See Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1036 (Del. 2017).

[51] *Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del.1964); *Martinez,* 86 A.3d at 1104 (citing *Ison,* 729 A.2d at 835).

[52] *Rapoport v. Litig. Tr. of MDIP Inc.*, 2005 WL 3277911, at *2 (Del. Ch. Nov. 23, 2005) (internal quotations omitted).

[53] *McWane*, 263 A.2d at 283.

## 2.    *Cryo-Maid* Analysis

There is no pendency of the same action in another jurisdiction.  Therefore, the Court is guided by the six *Cryo-Maid* factors to determine if there is an overwhelming hardship.[54]  The six factors include:

> (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[55]

### a. Ease of Access to Proof

The Complaint seeks damages from Dana's purported breach of contract.  Alternatively, Ethica argues unjust enrichment or pre-contractual liability.  The case is, therefore, about an alleged breach of contract—whether oral or written.  Modern methods of communication should facilitate transcontinental document exchange, making documentation in this case easier to produce.[56]  "Similarly, modern methods of transportation lessen the Court's concern about the travel of witnesses who do not live in Delaware."[57]  The Court notes that most of the operative documents are written in English including the email correspondence between Ethica and Dana.

However, Dana argues that it will face discovery issues based on Article 23 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention") and Italian law.[58]  The Rolla Declaration states that the

---

[54] *Cryo–Maid, Inc.,* 198 A.2d at 684.

[55] *Martinez*, 86 A.3d at 1104 (quoting *Cryo-Maid*, 198 A.2d at 684)).

[56] *See, e.g., Barrera v. Monsanto Company,* 2016 WL 4938876, at *6 (Del. Super. Sept. 13, 2016) (quoting *Rapaport,* 2005 WL 5755438, at *5)); *see Sands v. Union P. R.R. Co.*, 2017 WL 5664748, at *2 (Del. Super. Nov. 20, 2017) ("Delaware courts are accustomed to deciding controversies in which the parties are non-residents of Delaware and where none of the events occurred in Delaware.").

[57] *Vichi*, 2009 WL 4345724, at *13 (citing *Rapaport*, 2005 WL 5755438, at *5).

[58] *See generally* Rolla Decl.; *see also Abrahamsen v. ConocoPhillips Co.*, 2014 WL 2884870 (Del. Super. May 30, 2014); *IM2 Merchandising and Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168 (Del. Ch. Nov. 2, 2000).  *But see*

"Italian Government declares, in accordance with Article 23, that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries."[59]  Further, the Rolla Declaration states that "Italy also has adopted laws that restrict international discovery."[60]  The Italian Data Protection Code, which is based upon the 1995 EC Directive of the European Parliament, provides that the "cross-border transfer to non-European Union countries is allowed in certain cases set out by the Data Protection Code including those cases where the transfer is necessary for carrying out investigation by defense counsel or else to establish or defend a legal claim."[61]  However, the European Union adopted a "major overhaul" of 1995 EC Directive.  This new law took effect on May 25, 2018 and Dana is "uncertain how the [new law] will affect the transfer of documents to the United States from Italy."[62]

Despite Dana's assertion that it will face discovery issues, Ethica represented that it is willing to sign waivers that are necessary to facilitate cross-border transfer of data and documents subject to Italian data protection laws.  Moreover, by submitting to this jurisdiction through the Complaint, Ethica is bound by the Court's rules of civil procedure.  In addition, most of the operative documents, e-mails, etc., appear to be in English.  However, countering these

---

*Sands*, 2017 WL 5664748, at *2 ("Delaware courts have attributed less significance to the access to proof factor under the *Cryo-Maid* analysis in the context of corporate and commercial disputes involving larger, more sophisticated entities."); *In re Asbestos Litig.*, 929 A.2d 373, 383-84 (Del. Super. 2006) (stating that proximity to evidence is a factor, but is "by no means dispositive in determining overwhelming hardship."  In fact, the Delaware Supreme Court has "declined to find overwhelming hardship even in a case where the vast majority of the relevant evidence was in a faraway foreign country (New Zealand) and likely could be accessed only through the cumbersome procedures set forth in the Hague Convention.") (citing *Ison*, 729 A.2d at 843 and *Hall v. Maritek Corp.*, 170 A.3d 149, 167 (Del. Super. 2017), *aff'd*, 182 A.3d 113 (Del. 2018)).

[59] Rolla Decl. ¶ 13.
[60] *Id.* ¶ 13.
[61] *Id.* ¶ 12.
[62] *Id.*

fact, the "major overhaul" of the 1995 EC Directive is new and its application uncertain. Therefore, this factor is, at best, neutral.

### b. Availability of Compulsory Process for Witnesses

To prevail on the second factor, "Defendants must identify the inconvenienced witnesses and the specific substance of their testimony."[63] Categorical identification of witnesses is insufficient. In fact, the defendant must "cite with particularity specific witnesses who will be less inclined to cooperate in this forum."[64]

Regarding witnesses employed by the defendant "or its subsidiaries, 'it must be presumed that they would be paid by [the defendant or its subsidiaries] and consequently, are under [the defendant's] control and would appear in . . . Delaware . . . at [the defendant's] request.'"[65] Additionally, the parties may take depositions of fact witnesses.[66] Similar to "the relative ease of access to proof factor, modern methods of communication facilitate transcontinental depositions."[67]

This case focuses on whether Ethica and Dana entered into a binding agreement. Several witnesses for both parties should be under the parties' control; therefore, the parties should be able to compel the witnesses to testify. This includes at least six witnesses listed in the Schuett Declaration.[68] However, Dana notes that "testimony from Brevini individuals and other third parties will prove important."[69] Ethica engaged in negotiations with Brevini on behalf of Dana under a contractual relationship. Testimony from Brevini employees will be beneficial in this

---

[63] *Id.*
[64] *Lincoln Benefit Life Co. v. Wilmington Tr., N.A.*, 2018 WL 1638871, at *3 (Del. Super. Apr. 5, 2018).
[65] *Vichi*, 2009 WL 4345724, at *13 (quoting *HFTP Invs., LLC v. ARIAD Pharm., Inc.*, 752 A.2d 115, 123 (Del. Ch.1999)).
[66] *Id.*
[67] *SRL Mondani, LLC v. Mondani Spa Resort, Ltd.*, 2017 WL 1555876, at *3 (Del. Super. Apr. 28, 2017).
[68] Schuett Dec. ¶ 7.
[69] Mot. at 14.

case. However, Dana has failed to show that Brevini will likely not comply with a Delaware forum. Moreover, Dana now controls 80% of the common shares of Brevini.

Regarding the possibility of compelling third party witnesses, the Court does not find that Dana has presented strong evidence that many of the important witnesses will be unavailable. This factor is neutral with respect to dismissal.

### c. Possibility of the view of the Premises

This factor does not appear significant in the analysis. Ethica argues that there is no reason that viewing the property is required to determine whether there was a properly formed contract between the parties.[70] Dana states "it is doubtful a view of the Brevini's premises will be of considerable importance in this contract case. . . ."[71] However, Dana goes on to say that "there is no doubt that this factor weighs in favor of Dana."[72] The Court is not persuaded that this factor is necessary in this case. This factor does not favor dismissal.

### d. Applicable Law

The parties contend that Italian law governs the dispute. But, the parties disagree about the significance of this factor. Delaware courts must give significant "weight to a defendant's interest in having important issues of foreign law decided by the courts whose law governs the case."[73] This is important where the case "turns on unsettled issues of foreign law."[74] However, when the case involves settled foreign law, this factor does not weigh heavily in favor of the defendant.[75]

---

[70] Opp. at 26.
[71] Mot. at 15.
[72] *Id.*
[73] *Martinez*, 86 A.3d at 1102.
[74] *Id.*
[75] *See Candlewood*, 859 A.2d at 1002 ("expense and inconvenience of translating pertinent legal precedent, of retaining foreign lawyers, and of producing foreign law experts to testify at trial" is "not shown to be of material weight"); *Pipal*, 2015 WL 9257869, at *8 ("This Court is capable of applying settled Indian law.").

14

This case appears to be a relatively straight forward breach of contract claim. The legal determinations include whether Italian law recognizes oral contracts. The factual determinations include whether Dana's conduct was a breach of an oral contract or alternatively conduct resulting in unjust enrichment. This case does not appear to have any novel questions of Italian law on its face. This factor, therefore, does not favor dismissal.

### e. Dependency on Similar Actions in Other Jurisdictions

There is no prior pending action. "In the *forum non conveniens* analysis, the absence of a prior pending action in another jurisdiction 'is an important, if not controlling, consideration.'"[76] "It is well-established that, without such other pending action, judicial discretion is to be exercised sparingly in favor of dismissal."[77] This factor does not favor dismissal.

### f. Other Practical Problems

The Delaware Supreme Court recognizes that this factor is "neither hollow in meaning nor rigid in application."[78] "Depending on the circumstances, it may be proper to weigh the cost of prosecution, the operative rules of civil procedure, and similar public interest considerations under this factor."[79]

Dana argues that the only connection to Delaware is that Dana is incorporated in Delaware. However, the Court has ruled that dismissal is not warranted based on the fact that the only connection to Delaware is that the defendant is incorporated in Delaware.[80] Rather, it is a factor to consider in light of all other *Cryo-Maid* factors.[81] "Delaware has an interest in

---

[76] *SRL Mondani, LLC,* 2017 WL 1555876, at *4 (quoting *In re Asbestos Litig.*, 929 A.2d at (Del. Super. 2006)).
[77] *Id.*
[78] *Martinez*, 2014 WL 685685, at *5.
[79] *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *10 (Del. Ch. April 28, 2014) (citing *Ison,* 729 A.2d at 845; *Taylor*, 689 A.2d at 1200-01; *Martinez* 2014 WL 685685, at *5).
[80] *Barrera*, 2016 WL 4938876, at *8.
[81] *Id.*

regulating the conduct of entities incorporated under the laws of Delaware."[82] Further, the "Plaintiffs' choice of forum must be respected unless Defendant presents unique circumstances that create the overwhelming hardship required for a *forum non conveniens* dismissal under Delaware law."[83]

Recently, the Delaware Supreme Court held that the availability of an alternative forum is a factor courts should consider in a *forum non conveniens* analysis.[84] Moreover, a court may "dismiss a transnational dispute when the defendant has demonstrated overwhelming hardship . . . even if an alternative forum is not available."[85] In this case, Italy would be an alternative forum. But, it is not clear from the record whether Ethica could bring its claims in Italy or if the claims would be barred by a similar principle as statute of limitations. However, at the Hearing, Dana stated that it would waive any statute of limitations argument in an Italian court.[86] There are no other overwhelming practical problems that favor dismissal of the case.

---

[82] *Sands v. Union P. R.R. Co.*, 2017 WL 5664748, at *3 (Del. Super. Nov. 20, 2017).
[83] *Id.*
[84] *Amanda v. Philip Morris USA Inc.*, 2018 WL 1415215 at *7 (Del. Mar. 22, 2018).
[85] *Amanda,* 2018 WL 1415215 at *7 (Del. Mar. 22, 2018).
[86] *See also* Mot. at 19 (stating "Dana consents to proceeding in Italy").

# V. CONCLUSION

Dismissal under *foreign non conveniens* is drastic relief and only warranted in "rare cases."[87] To avoid the Ethica's choice of forum, Dana needed to show *"with particularity"* that it would be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware.[88] The Court finds and holds that Dana has failed to show that the inconvenience and hardship are "so profound" that they "overwhelm" Ethica's choice of forum. Accordingly, for the reasons stated above, the Court **DENIES** the Motion and the Motion to Strike.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress

---

[87] *See Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 842 (Del. 1999); *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1198 (Del. 1997) ("Delaware courts consistently uphold a plaintiff's choice of forum except in rare cases.").
[88] *Pipal Tech Ventures Private Ltd. v. MoEngage, Inc.*, 2015 WL 9257869, at *5 (Del. Ch. 2015) (quoting *Taylor*, 689 A.2d at 1199).